In the Interest of H.R., A Child.

No. 04–01–00737–CV.

Court of Appeals of Texas, San Antonio.

July 10, 2002.

**694**

Joel Richardson, San Antonio, for appellant.

Susan D. Reed, Criminal District Attorney, Scott Roberts, Assistant Criminal District Attorney, San Antonio, for appellee.

Bowen W. Sutton, San Antonio, attorney Ad Litem.

Brenda Lee Knowles, Law Office of Brenda Lee Knowles, San Antonio, attorney Ad Litem.

Sitting: ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: ALMA L. LÓPEZ, Justice.

This is an appeal from a decree terminating the parental rights of a mother to her daughter. In six issues to this court, Julia Reyes contends that the evidence was legally and factually insufficient to support termination and finding that such termination was in the best interest of her child. In two other issues, Reyes contends that the trial court abused its discretion in denying her motion for continuance and motion for new trial. In a separate brief to this court, Reyes also asserts that the trial court erred in ruling she did not warrant appointed counsel on appeal.[1] We affirm the judgment of the trial court. However, we reverse the trial court's ruling denying Reyes appointed counsel on appeal.

## BACKGROUND

On November 30, 2000, the Texas Department of Protective and Regulatory Services (the "Department") filed its original petition seeking termination of the parent-child relationship of Reyes and H.R.[2] H.R. was twenty-months old at the time the petition was filed. The petition was filed after H.R. and her nine-year old cousin, J.S., were taken into emergency custody on or about November 17, 2000 by the Department after the cousin complained to a school counselor that she and H.R. had been abused. In a sworn affidavit in support of the petition, the Department alleged that J.S. reported to her counselor that Reyes would use illegal drugs in front of her and H.R. She informed her counselor that Reyes had many different men come to their home on a daily basis and that sometimes Reyes would leave her and

**1.** On April 19, 2002, this court ordered Reyes to file a brief regarding the trial court's determination of indigence and denial of appointed counsel on appeal. *See* TEX. FAM.CODE ANN. § 263.405(e) & (g) (Vernon Supp.2002).

**2.** The Department also sought termination of Gilbert Reyes's parental rights as H.R.'s father.

H.R. with these men when she went out drinking. J.S. also reported that Reyes left H.R.'s care up to her. When Reyes would return home from a bar, she would wake J.S. to care for H.R. J.S. reported that Reyes would hit and pinch her and H.R. such that it would leave a mark or bruise. J.S.'s school counselor observed that J.S. had purple bruises on her upper left arm. On that day, a temporary order appointing the Department as temporary managing conservator was entered. When family case workers arrived at the home to remove the children, they found H.R. with a man who would not identify himself. Reyes was not at home and the man could not tell case workers where she was. Case workers found H.R. in a soiled diaper and infested with head lice. While at the house, J.S. was able to show the workers where Reyes's drug paraphernalia was kept.

On November 30, 2000, the court entered an order for protection of H.R. and named the Department her temporary sole managing conservator. H.R. was placed in foster care and appointed an attorney ad litem. On December 17, 2000 a permanency hearing was held. An order entered after that hearing appointed Reyes as temporary possessory conservator of H.R. The court granted limited visitation rights to Reyes and ordered her to pay child support in the amount of $155.00 a month. The court specifically ordered Reyes to attend counseling, parenting classes, complete an in-patient drug treatment program and comply with the Department's service plan. The trial court subsequently appointed an attorney ad litem for Reyes pursuant to section 107.013 of the Texas Family Code. Reyes filed an answer to the Department's petition which generally denied the allegations. After a status hearing in January 2001, the court entered an order approving the Department's service plan and specifically found that Reyes had

reviewed and understood the plan and was willing to comply with it.

Permanency plan progress reports mapping Reyes's progress were filed with the court. The first was entered in June 2001. According to the report, Reyes was marginally and sporadically participating with the service plan. For example, she missed more appointments than she attended for an out-patient drug treatment program. At one point, she had even been discharged from the program, but was allowed back in. Reyes refused to enroll in an in-patient treatment program despite the fact that she had tested positive for cocaine in February 2001. She had obtained a psychological assessment and was diagnosed with a personality disorder.

On June 2, 2001, Reyes filed a motion for continuance of the next permanency hearing for a six-month period in order to complete the requirements of her service plan. That motion was partially granted and a non-jury trial was set for October 2001. A hearing was held and an order was entered continuing the service plan. Another progress report was entered in September 2001. The report reflected that Reyes was unsuccessfully discharged for a second time from the out-patient drug treatment program. While she had previously attended individual counseling sessions, she stopped attending in May 2001. She also stopped attending her parenting classes. Reyes was employed for a period of two months. She, however, lacked permanent housing. She also had maintained sporadic contact with the Department. The report also noted that she had not participated in any parent-child visits since June 2001.

Subsequently, Reyes filed another motion for continuance. A non-jury trial was set for October 24, 2001. On October 24, 2001, Reyes's motion for continuance was

denied and a non-jury trial was held. The trial court entered an order terminating Reyes's parental rights. The trial court specifically found that there was clear and convincing evidence to support six statutory grounds for terminating Reyes's parental rights:

(1) knowingly placing or knowingly allowing H.R. to remain in conditions or surroundings which endangered her physical or emotional well-being;

(2) engaging in conduct or knowingly placing H.R. with persons who engaged in conduct which endangered her physical and emotional well-being;

(3) constructively abandoning H.R. for no less than six months while she was in the custody of the Department;

(4) failing to comply with the provisions of a court order which specifically established the actions necessary for Reyes to obtain the return of H.R.;

(5) using a controlled substance that endangered the health and safety of H.R.; and

(6) causing H.R. to be born addicted to an illegal controlled substance.

*See* Tex. Fam.Code. Ann. § 161.001(1)(D),(E),(N),(O),(P) and (R) (Vernon Supp.2002). Reyes filed a motion for new trial and an amended motion for new trial in November 2001. Reyes also filed a request for findings of fact and conclusions of law. A final order terminating Gilbert Reyes's parental rights was entered on December 12, 2001.[3] The trial court denied Reyes's motion for new trial and entered findings of fact and conclusions of law on January 28, 2002. The

trial court's findings specifically stated that Reyes physically abused H.R. prior to November 30, 2000. Additionally, once H.R. was in the Department's custody, Reyes failed to regularly visit her. The trial court also found that Reyes failed to complete an in-patient drug treatment program as ordered by the court. The trial court also found that Reyes had also failed to complete services or classes, did not seek access or visit H.R., and failed to establish a safe and stable environment where H.R. could be placed with her.

## STANDARD OF REVIEW

Involuntary termination proceedings must be strictly scrutinized. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). A parent's parental rights can only be terminated by a showing of clear and convincing evidence. *See* Tex. Fam.Code Ann. 101.007 (Vernon 1996); *In Interest G.M,* 596 S.W.2d 846, 846 (Tex.1980). We apply an intermediate standard of clear and convincing evidence when an appellant challenges the factual sufficiency of the evidence. *See In Interest of B.T.,* 954 S.W.2d 44, 46 (Tex.App.-San Antonio 1997, writ denied); *In Interest of H.C.,* 942 S.W.2d 661, 663 (Tex.App.-San Antonio 1997, no writ). Under such a standard, we ask whether sufficient evidence was presented to produce in the mind of a rational fact finder a firm belief or conviction that grounds exist for termination. *In Interest of C.H.,* —— S.W.3d —— 2001 WL 1903109 (Tex. July 3, 2002). *In Interest of G.M.,* 596 S.W.2d at 847. Reyes also contends the evidence was legally insufficient. In reviewing a legal sufficiency challenge, we consider all of the evidence in a light most

---

**3.** Reyes filed her notice of appeal shortly after the order terminating her parental rights was entered. Technically, at that point, she was not appealing a final order of the trial court. Therefore, her notice of appeal was premature. Reyes's notice of appeal, however, was deemed filed after the order terminating Gilbert Reyes's parental rights was entered. *See* Tex.R.App. P. 27.1(a).

favorable to the party in whose favor the verdict was rendered and indulge every reasonable inference in that party's favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998).

### INVOLUNTARY TERMINATION

The trial court terminated Reyes's parental rights on six grounds under section 161.001(1) of the Texas Family Code. On appeal, Reyes challenges only four of those grounds. Reyes fails to challenge the trial court's findings that she was the cause of H.R. being born addicted to a controlled substance as encompassed under section 161.001(1)(R) or that she engaged in conduct or knowingly placed H.R. with persons who engaged in conduct which endangered H.R.'s well-being as encompassed under section 161.001(1)(E). Assuming we were to hold that the record was insufficient to support the trial court's findings Reyes contests on appeal, the decree terminating Reyes's rights would still be supported by the unchallenged findings. *See In re S.F.,* 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.); *In re K.C., Jr.,* 23 S.W.3d 604, 607 (Tex.App.-Beaumont 2000, no pet.).

Nonetheless, we hold that the evidence was legally and factually sufficient to support the grounds for termination under section 161.001(1) of the Texas Family Code. A review of the record reflects the trial court considered the testimony of three individuals: Reyes, her case worker Melissa Montgomery Lipsey and H.R.'s case worker Manuel Alvizo.

Lipsey testified that she was officially assigned as Reyes's case worker in March 2001. By that time, Reyes had an extensive history with the Department having been referred no less than nine times for various allegations, including neglect and physical abuse of H.R. and her cousin.

Lipsey testified as to the requirements of the service plan which Reyes had to meet in order to regain custody of H.R. Those requirements included successfully completing an in-patient drug treatment program, random urinalysis, obtaining stable employment, obtaining stable housing and undergoing individual counseling. The service plan was adopted by the court in December of 2000. At that time, Reyes had the opportunity to review the plan and even signed the order adopting the plan. In reviewing Reyes's case file, Lipsey noted that Reyes had enrolled in an out-patient drug program, but was discharged for missing appointments. Reyes offered the excuse that the program meeting dates conflicted with her individual counseling dates. However, Lipsey later learned Reyes's individual counseling sessions were generally scheduled late in the day while out-patient services were provided in the morning. Lipsey also learned Reyes was making her appointments for out-patient services on the same days as her individual counseling. Lipsey also testified that Reyes had tested positive for cocaine in February 2001. According to Lipsey, Reyes attributed the positive result to her taking cough syrup containing codeine.

Lipsey did not believe Reyes had found stable employment. She acknowledged that Reyes had been employed as a cook at Kelly Air Force Base in April 2001. However, in June 2001, Lipsey learned that Reyes was no longer employed there. Additionally, during the course of 2001, Reyes failed to maintain voluntary contact with the Department. In fact, Lipsey was unaware that Reyes had served time in jail during the year. Additionally, Reyes had not seen H.R. since June 2001 and had failed to provide child support as ordered by the court. Lipsey acknowledged that Reyes had partially completed some of the

requirements under the service plan. Reyes, however, had failed to complete the most important task of her service plan, in-patient drug treatment.

The trial court next heard the testimony of Julia Reyes. Reyes did not recall being ordered to undergo in-patient drug treatment as early as December 2000. When shown the court order from that month, however, Reyes acknowledged that she had agreed to such counseling and had also agreed to pay child support while H.R. was in the Department's custody. She admitted she never paid such support. Reyes also acknowledged that she had tested positive for cocaine in February 2001. At the hearing, contrary to what she had told Lipsey, Reyes attributed the positive results to having attended a banquet with her sister. Reyes did not know how the drug had gotten into her system. Reyes denied having a drug problem even though she had tested positive for cocaine earlier in the year. Rather, she believed she had an alcohol problem.

In the course of the year, Reyes had three different jobs and had even received a promotion at one place of employment. She testified she quit her job in order to complete the service plan. Reyes emphasized that she had completed part of the service plan by attending anger management classes, individual counseling, and parenting classes. She attributed her difficulties in meeting the plan requirements to the Department and Lipsey. Reyes contended that Lipsey was difficult to reach and would only return her phone calls ten percent of the time. Additionally, the paperwork she needed from the Department to initiate and undergo services would not get to the service providers. Reyes felt that she could have completed

her plan if she had been given more support from Lipsey. Reyes admitted that she had not undergone services in compliance with the plan since June 2001 and that she had not seen H.R. since that time.

Finally, the court heard from Manuel Alvizo, H.R.'s case worker. Alvizo testified that H.R. was in foster care where her needs were being met. At the time of the hearing, H.R. was not experiencing medical problems.[4] When she was taken from Reyes, H.R. had a severe case of diaper rash. As a result of this experience, she easily succumbs to diaper rash. Alvizo also testified that H.R. was experiencing a two-month delay in her speech, but was undergoing speech therapy. While in the Department's custody, Reyes visited H.R. on nine separate occasions. Alvizo's file reflected that Reyes last visited H.R. in May 2001. Alvizo stated he had some concerns regarding Reyes's ability to care for H.R. based upon his observation of Reyes's interaction with H.R. on these visits. He noted that on many occasions Reyes would pretend to cry or fight in order to get H.R.'s attention. Additionally, she would regularly refer to H.R. as "chubby" or "hard-headed" in Spanish.

We conclude the evidence was legally sufficient to support the trial court's findings under section 161.001(1)(D), (N), (O), and (P) of the Texas Family Code. Section 161.001(1)(D) requires the evidence to establish that the environment within which the child was placed caused the child's physical or emotional well-being to be endangered. *In Interest of H.C.*, 942 S.W.2d at 664. In order for parental conduct to constitute endangerment of a child's well-being, the conduct need not be directed at the child

4. After H.R. was taken in custody by the Department, a medical exam revealed she had a benign heart murmur.

and the child need not actually suffer injury. Rather, endanger means "to expose to loss or injury; to jeopardize." *Texas Dept. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Reyes endangered H.R.'s physical and emotional well-being by leaving her in the care of her nine-year old cousin while she went out drinking. Additionally, there was evidence of prior neglect. There was also evidence that when H.R. was removed, she was found in a filthy diaper in the care of an unknown man at a home containing drug paraphernalia. We believe such evidence amounts to exposing H.R. to injury and jeopardizing her well-being.

■ The evidence was also legally sufficient to support constructive abandonment under section 161.001(1)(N). H.R. was taken into custody in November 2000. The service plan which was adopted by the court informed Reyes of things she would have to do in order to get H.R. back. Reyes admitted that she failed to fulfill the requirements of the court ordered service plan, including completing an in-patient substance abuse program. The evidence also reflects Reyes failed to successfully complete an out-patient drug program, obtain stable employment, and complete parenting classes. Reyes admitted she had not paid any child support for H.R. Moreover, she tested positive for cocaine. The evidence also reflected that Reyes did not hold a steady job during the course of 2001. Further, while the evidence reflected that Reyes intermittently visited H.R. from February 2001 through May 2001, she failed to see H.R. thereafter. *See In re P.R.*, 994 S.W.2d 411, 416 (Tex. App.-Fort Worth 1999, pet. dism'd w.o.j.) (finding evidence sufficient under section 161.001(1)(N) where mother sporadically visited child, used drugs, and failed to comply with service plan). The same evidence was legally sufficient evidence to support Reyes's failure to comply with provisions of a court order pursuant to section 161.001(1)(O).

■ Finally, the evidence was also legally sufficient to support termination of Reyes's parental rights on the grounds that she used a controlled substance in a manner that endangered her child. *See* Tex. Fam.Code Ann. § 161.001(1)(P) (Vernon Supp.2002). The fact that H.R. was born addicted to drugs supports the logical inference that Reyes used drugs while pregnant and thereby exposed H.R. to injury. Evidence was also presented that H.R. was found in a home with drug paraphernalia that was easily accessible to children. There was also the fact that Reyes tested positive for cocaine while under court order.

■ Reyes's contention that the evidence was factually insufficient to support termination on the above-referenced grounds is without merit. Reyes does not dispute the assertion that she left H.R. with unidentifiable men. Rather, she contends there was no evidence showing these men constituted a threat to H.R.'s safety. Further, she proffered evidence that she visited H.R. on her birthday in March 2001 to rebut the assertion she had constructively abandoned H.R. Reyes also points to evidence that she completed the majority of her parenting classes, participated in individual counseling and attended anger management classes as provided under the service plan. She also contends that at the time of the final hearing she had been accepted into an in-patient drug treatment program known as Alpha House.

■ Even under a heightened factual sufficiency review, a finding is sustained if there is sufficient competent evidence of probative force to support it. *See In Interest of B.R.*, 950 S.W.2d 113, 121 (Tex.App.-El Paso 1997, no writ). As a

reviewing court, we cannot substitute our conclusions for those of the fact finder. *See id.* After considering all the evidence, we conclude that the trial court could have reasonably concluded that termination was warranted under sections 161.001(1)(D), (N), (O) and (P). We overrule Reyes's first issue and issues three through six.

In her second and eighth issues, Reyes contends the evidence was legally and factually insufficient to support that termination was in the best interest of H.R. For this reason, she alleges the trial court erred in denying her motion for new trial. Under section 161.001, termination must also be in the best interest of the child. *See* TEX. FAM.CODE. ANN. § 161.001(2) (Vernon Supp.2002). There is a strong presumption that the best interest of the child is served by keeping custody in the natural parent. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex.App.-Fort Worth 2001, no pet.); *In re K.C.M.*, 4 S.W.3d 392, 393-95 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). The factors which a court should consider when determining the best interest of the child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the parental ability of the individuals seeking custody; (4) the programs available to assist these individuals to promote the best interest of the child; (5) the plans for the child by these individuals or by the agency seeking custody; (6) the stability of the home or proposed placement; (7) the acts or omissions of the parents which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976). However, best interest does not require proof of any unique set of factors, nor does it limit proof to any specific factor. *See In re D.M.*, 58 S.W.3d at 814.

Lipsey testified that it was in the best interest of H.R. to terminate Reyes's parental rights based upon her lack of compliance and progress while H.R. was in the Department's custody. Lipsey based this conclusion on Reyes's failure to go to an in-patient treatment program. While she acknowledged that Reyes had gotten into a program at the time of the hearing, based upon past practice, she did not anticipate Reyes's completion of such a program. On one prior occasion, Reyes had verbally agreed to go to an in-patient program in Abilene. However, when it came time to go through with the program, neither Lipsey nor her attorney could locate her. Reyes did not dispute this evidence and admitted that her attorney had offered to drive her to Abilene. On another occasion, Reyes had informed Lipsey she had been assessed by another program. However, Reyes never followed through with the program. Alvizo testified that H.R.'s foster placement was meeting her needs and that her foster parents had indicated they wanted to adopt her. Alvizo had not witnessed any bonding between Reyes and H.R. since May 2001. In fact, H.R. testified that she really could not remember the last time she had seen her daughter. Contrastingly, he had seen bonding between H.R. and her foster parents. He also believed that it was in H.R.'s best interest to remain with her foster parents and terminate Reyes's parental rights.

Under the heightened legal sufficiency standard, we find that there was probative evidence to support the trial court's determination that termination was in the best interest of H.R. Lipsey's testimony establishes that Reyes failed to commit to the goals necessary to get H.R. back. This evidence together with the evidence that Reyes had a history of abuse and neglect speaks volumes as to her parental abilities. Further, there was evi-

dence that when programs or services were offered to Reyes, she refused to participate or failed to follow through. Her need to play-fight or pretend to cry in order to get her daughter's attention could have indicated to the trial court that the parent-child relationship was not a proper one. Further, the excuses Reyes offered for her omissions were mainly attributed to the Department and Lipsey. Reyes did not accept most of the responsibility for failing to complete services. Finally, there was the evidence that Reyes had not bonded with the child since June 2001.

Further, we conclude the evidence was factually sufficient to support the trial court's finding that termination was in the best interest of H.R. Reyes's testimony that she partially completed certain services under the plan weighs in her favor. We also consider the evidence that she had been accepted into an in-patient treatment program at the time of the hearing. Reyes is also H.R.'s biological mother. Arguably, there is evidence to support both sides of the best interest determination. Under our review, however, we cannot substitute our conclusions for those of the trial court. *See In Interest of B.R.,* 950 S.W.2d at 121. We overrule Reyes's second and eighth issues.

### CONTINUANCE

In her seventh issue, Reyes contends the trial court erred in denying her motion for continuance. The record reflects Reyes filed a motion to continue the permanency hearing on her parental rights on the basis that she was sick and had been the victim of a car jacking. We review a trial court's denial of a motion for continuance under an abuse of discretion standard. *See General Motors Corp. v. Gayle,* 951 S.W.2d 469, 476 (Tex.1997) (orig. proceeding).

No continuance shall be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX.R. CIV. P. 251. The record reflects that Reyes was present at the hearing on her motion for continuance and provided testimony in support of the motion. However, Reyes failed to present other evidence, such as a medical affidavit, supporting her medical condition and its affect on her ability to attend the permanency hearing. *See Olivares v. State,* 693 S.W.2d 486, 490 (Tex.App.-San Antonio 1985, writ dism'd). Further, she failed to provide a police report to support her contention that she had been the victim of a car jacking. Additionally, she failed to testify as to the impact the car jacking had on her ability to prepare and attend the permanency hearing.

Reyes also testified that she had recently been accepted by an in-patient drug treatment program and needed more time to complete the program. The record reflects that Reyes was aware she needed to get such treatment as early as December 2000. The record also reflects that when she had prior opportunities to enter such treatment, she would disappear or fail to follow through. Under these circumstances, we hold the trial court did not abuse its discretion in denying Reyes's motion for continuance.

### INDIGENCE AND APPOINTMENT OF COUNSEL

Reyes's appellate counsel, Joel Richardson, was originally appointed pursuant to section 107.013 of the Texas Family Code on December 2000. On the same day Reyes filed a notice of appeal, she also filed an affidavit of indigence. The affidavit reflected that Reyes had no sources of income, that she owed approximately $287.00 for a loan, and that she incurred monthly expenses of approximately $86.00 a month. After a hearing on indigence, on

January 10, 2002, the trial court entered an order sustaining Reyes's affidavit, but ordered her to pay $75 a month "toward payments of attorney's fees." Richardson filed a brief on behalf of Reyes in this court on February 12, 2002. The same day he was refused payment by the Bexar County District Clerk's office on the basis that he had not been appointed as counsel on appeal. A hearing was held on whether Richardson was appointed counsel. At the hearing, the trial court orally ruled that Reyes was not entitled to appointed counsel and that Richardson had represented Reyes as a retained attorney. The trial court specifically found that Richardson was owed $833.91 for his work and costs. The trial court ordered the following:

> [B]ecause you undertook to represent Mrs. Reyes on the appeal, [you] are going to be paid—should be paid by her, but out of the $75 that she is paying into the clerk's office every month, the $75 is going to pay the costs of the clerk's preparation of the record. Once that fee had been paid down to zero, then any continued payments that she makes passed [sic] that of $75 a month are to go towards paying down your fees.

Richardson argues that the trial court abused its discretion in denying Reyes appointed counsel on appeal. We agree.

■■■■ We review questions of the appointment of counsel under an abuse of discretion standard. *See Smith v. Smith,* 22 S.W.3d 140, 151 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A trial judge abuses her discretion if she acts without reference to any guiding rules or principles, if the facts and law only permit one decision and it is the opposite of the trial judge's decision, or if the judge's ruling is so arbitrary and unreasonable as to be clearly wrong. *See Arevalo v. Millan,* 983 S.W.2d 803, 804 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

■■■■ In order to have appointed Richardson as Reyes's counsel in December 2000, the trial court determined that Reyes was indigent. *See* TEX. FAM.CODE ANN. § 107.013(a)(1) (stating a trial court shall appoint an attorney ad litem to represent the interests of an indigent parent of the child who responds in opposition to the termination). The same determination was made when the trial court sustained Reyes's affidavit of indigence on January 10, 2002.[5] After Reyes's parental rights were terminated, Richardson filed a motion for new trial and statement of appellate points pursuant to section 263.405 of the Texas Family Code. He also filed a notice of appeal. By undertaking these acts, Richardson represented himself to this court as Reyes's counsel on appeal. Moreover, the record does not contain an order allowing Richardson to withdraw as attorney of record. Under these facts, we conclude that Richardson was Reyes's appointed counsel on appeal, and that the trial court abused its discretion in holding otherwise. *See* TEX. FAM.CODE ANN. § 263.405(g) (Vernon Supp.2002) (stating

---

**5.** The fact that the trial court sustained Reyes's affidavit of indigence in part is of no consequence since the court erroneously ordered monthly payments for attorney's fees. Section 263.405 provides that a trial court can order an appellant to pay partial costs. *See* TEX. FAM.CODE ANN. § 263.405(e) (Vernon Supp.2002). Section 263.405 does not address attorney's fees. For purposes of appeal, attorney's fees are not considered "costs." *Harris County Children's Protective Servs. v.*

*Olvera,* 971 S.W.2d 172, 177 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *see also* TEX.R.APP. P. 20.1(m). Accordingly, the trial court had no discretion to order Reyes's payments of attorney's fees upon finding she was indigent. *See In re Smith,* 70 S.W.3d 167, 168 (Tex.App.-San Antonio 2001, no pet.) (stating a trial court's determination of indigence is reviewed by an abuse of discretion standard.).

that once a court considers the person to be indigent the court "shall appoint counsel to represent the person").

Our conclusion is reinforced by the current state of the law regarding an appellant's right to appeal in a parental rights termination case. Section 263.405 of the Texas Family Code, effective September 1, 2001, sets forth the procedures and time lines to be followed in an appeal from a parental rights termination case. The section specifically provides that appeals from a final order are guided by the Rules of Appellate procedure on accelerated appeals. *See* TEX. FAM.CODE ANN. § 263.405(a) (Vernon Supp.2002). The section also provides that within 15 days of the date a final order is signed an appellant must file a statement of points on which the party intends to appeal. *See* TEX. FAM.CODE ANN. § 263.405(b) (Vernon Supp.2002). The statement may be combined with a motion for new trial. *See id.* Under the appellate rules, a notice of appeal must be filed within 20 days of the date of the final order. *See* TEX.R.APP. P. 26.1(b). The end result of these rules is to place appeals in termination cases on an accelerated track. However, the practical effect is that it places an appellant's trial counsel in the position of being appellate counsel because it is this attorney who will undertake the required steps to preserve their client's appellate rights. This case exemplifies this result.

We sustain Reyes's last issue on appeal and reverse the trial court's order denying Reyes appointed counsel.

### CONCLUSION

Because we hold the evidence was legally and factually sufficient to support the termination of Reyes's parental rights and that such termination was in the best interest of H.R., we overrule Reyes's issues regarding termination on appeal. We also hold that the trial court did not abuse its discretion in denying Reyes's motion for continuance and overrule Reyes's seventh issue. Finally, we hold the trial court erred in ordering Reyes was partially indigent, ordering payment for attorney's fees, and denying her appointed counsel on appeal.