Opinion filed May 11, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed May 11, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00083-CV 

                                                    __________

 

                                IN THE INTEREST OF S.S., A CHILD

 



 

                                         On
Appeal from the 326th District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 5699-CX

 



 

                                              M
E M O R A N D U M  O P I N I O N

 

This is an involuntary termination of parental
rights action under Tex. Fam. Code Ann. ch.
161 (Vernon 2002 and Supp. 2005).  The
trial court terminated the parent-child relationship between appellant, Damon
Horton, and his child, S.S.  We affirm.

                                                               Background
Facts








S.S. was born on September 21, 2003, and was
seventeen months old at the time of trial. S.S.=s
parents are Horton and Delores Salazar. 
The Texas Department of Family and Protective Services was named
temporary managing conservator of S.S. shortly after her birth.  The Department removed S.S. from the hospital
the day after she was born and placed her with a foster family.  S.S. was with the same family at the time of
trial.  Salazar was in jail and had been
sentenced to twelve years in prison.  She
voluntarily terminated her parental rights prior to trial by signing an
affidavit of voluntary relinquishment.

The Department initially attempted to reunite S.S.
and Horton.  It provided structured
visitation sessions, counseling, and training. 
Horton failed to comply with the family service plans, and the
Department recommended termination of Horton=s
parental rights so that S.S. could be adopted by her foster family.  The court held a bench trial, found that
Horton had constructively abandoned S.S., found that termination of Horton=s parental rights was in S.S.=s best interest, and entered an order
terminating Horton=s
parental rights.

                                                                         Issues

Horton challenges the trial court=s judgment with two issues.  First, Horton contends that the evidence is
legally and factually insufficient to support the trial court=s finding that he constructively
abandoned S.S.  Second, Horton contends
that the evidence is legally and factually insufficient to support the trial
court=s finding
that termination of the parent-child relationship was in S.S.=s best interest.

                                                              Standard
of Review

Texas courts have long recognized that the natural
right existing between a parent and child is of Aconstitutional
dimensions.@  Wiley v. Spratlan, 543 S.W.2d 349, 352
(Tex. 1976).  There is a strong
presumption that the best interest of a child is served by keeping the child
with the natural parent.  In re G.M.,
596 S.W.2d 846 (Tex. 1980). 
Consequently, involuntary termination proceedings and statutes are
strictly scrutinized in favor of the parent. 
Holick v. Smith, 685 S.W.2d 18, 20-21 (Tex. 1985).

Due process requires that the Department establish
the grounds for termination by clear and convincing evidence.  This requires a measure or degree of proof
which will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established.  Tex.
Fam. Code Ann. '
101.007 (Vernon 2002); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31
(Tex. 1994).








When conducting a legal sufficiency review, we
examine all of the evidence in the light most favorable to the trial court=s finding and determine whether a
reasonable fact-finder could have formed a firm belief or conviction that its
finding was true.  Phillips v. Tex.
Dep=t of
Protective and Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.CEastland 2004, no pet.).  We must assume that the trial court resolved
disputed facts in favor of its finding if a reasonable fact-finder could have
done so and disregard all evidence that a reasonable fact-finder could have
disbelieved or found to be incredible.  Id.

 When
conducting a factual sufficiency review, we review the entire record, including
evidence in support of and contrary to the judgment, and give due consideration
to evidence the trial court could have found to be clear and convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  We then determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction about the truth of the State=s
allegations.  Id.  We also consider whether any disputed
evidence is such that a reasonable fact-finder could not have resolved that
evidence in favor of its finding.  In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).

                                                         Grounds
For Termination

To terminate parental rights, the Department must
prove by clear and convincing evidence that a parent committed one or more of
the acts or omissions set out in Section 161.001(1) and then that termination
of parental rights is in the child=s
best interest. Richardson v. Green, 677 S.W.2d 497, 499 (Tex.
1984).  Section 161.001(1) provides in
relevant part:

The court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence:

 

(1)
that the parent has:

 

.
. . .

 

(N) constructively abandoned the child who has
been in the permanent or temporary managing conservatorship of the Department
of Family and Protective Services or an authorized agency for not less than six
months, and:

 

(i) the department or autho-rized agency has made
reasonable efforts to return the child to the parent;

 








(ii) the parent has not regularly visited or
maintained significant con-tact with the child; and

 

(iii) the parent has demon-strated an inability to
provide the child with a safe environment.

 

Horton does not dispute that the Department has
been the temporary managing conservator of S.S. for more than six months.  Horton does, however, challenge the trial
court=s
findings that he constructively abandoned S.S. and that Section 161.001(1)(N)=s elements were satisfied.

Did The Department Make Reasonable Efforts To
Return S.S. To Horton?

The Department ultimately prepared three service
plans to help reunite Horton and S.S.[1]  The Department reviewed each plan with
Horton.  The Department arranged and paid
for a psychological evaluation and a drug assessment and provided Horton with
counseling and parenting classes.  The
Department scheduled regular visitation for Horton.  It provided a parenting instructor and gave
Horton one-on-one parenting training during visitation.  Ultimately, the Department provided Horton
with approximately twenty, one-hour parenting sessions.  The Department offered Horton two hours of
weekly training, but he only attended one session each week.  The Department offered to change visitation
times to accommodate Horton and provide him with more visitation, but he
declined.

The Department=s
initial plan was reunification.  That
changed to termination in the summer of 2004 when Horton began missing visits
and leaving visitation sessions early. 
The Department was concerned that Horton did not understand what it
meant to be an appropriate parent and that Horton refused to submit to drug screens
and denied any drug use to the Department even though he had previously
admitted to a counselor that he used and sold drugs.[2]








Horton challenges the Department=s intent, arguing that its focus was
not on reunification but on convincing him to relinquish his parental rights so
that S.S. could be adopted by her foster parents.  Horton also argues that he worked hard to
learn about parenting until the Department decided to seek termination and that
he became discouraged by the process.  As
a reviewing court, we cannot substitute our conclusions for those of the
fact-finder, even when applying a heightened standard of review.  In re H.R., 87 S.W.3d 691, 699-700
(Tex. App.CSan
Antonio 2002, no pet.).  We must assume
that the trial court resolved any conflicting evidence about the Department=s intent and Horton=s effort in favor of its finding.  Phillips, 149 S.W.3d at 817.

Horton also argues that his contact with S.S. was
more significant than the father in In re K.W., 138 S.W.3d 420 (Tex.
App.CFort
Worth 2004, pet. denied), where a termination order was reversed.  That case is distinguishable.  There, the father was incarcerated in New
York.  When he became aware of the child=s whereabouts and situation, he
expressed a desire to become more involved with his child=s life, sent regular letters to the
Department and court, and requested that his child be placed with a family
member who was a licensed foster parent. 
Id. at 432-33.  Horton had
more actual contact than the father in K.W., but that father did the
best he could under the circumstances and had suggested an arrangement which
would have provided for the child=s
well- being and welfare. Horton, however, significantly failed to take
advantage of the opportunities presented to him and did not present a
satisfactory alternative arrangement for S.S. 

Texas courts have held that the preparation and
administration of service plans by the Department are reasonable efforts to
reunite a parent and child.  See In re
K.M.B., 91 S.W.3d 18, 25 (Tex. App.CFort
Worth 2002, no pet.).  The Department
provided Horton every opportunity to become a part of his child=s life. 
He failed to take advantage of those opportunities.  We find that there was legally and factually
sufficient evidence that the Department made a reasonable effort to reunite
Horton with S.S.

                      Did
Horton Regularly Visit Or Maintain Significant Contact With S.S.?








A parent fails to regularly visit or maintain
significant contact with the child if the parent fails to take advantage of the
visitation rights or if the visits are intermittent or sporadic.  In re H.R., 87 S.W.3d at 699; In re
P.R., 994 S.W.2d 411, 416 (Tex. App.CFort
Worth 1999, pet. dism=d
w.o.j.).  S.S. has never lived in Horton=s home. 
Horton had weekly scheduled visitation with S.S.  Initially, he attended most of these
visits.  Later, Horton started missing
visits but did not call the Department to let it know when he could not
attend.  He left visits early and had
difficulty staying awake during a visit. 
Horton told the Department officials that he was staying up late,
sometimes until four or five o=clock
in the morning with his friends.  The
Department advised Horton that he needed to demonstrate that he could change
his routine, but he did not do so. 
Horton testified that he left visits early because he had to go to
work.  The Department offered to change
his visitation time to accommodate his schedule and provide him more
visitation, but Horton declined.

Horton made one visit in July 2004 and two visits
in August.  He only visited S.S. twice
after September 2004, and he did not visit her at all between October 2004 and
January 2005.  He admitted that he did
not call the Department between October 2004 and January 2005 to find out how
S.S. was doing.  He did not send S.S. a
birthday present nor visit her for Christmas. 
He did give her a Christmas present on February 3, 2005 B approximately three weeks before
trial.

We hold that this evidence is legally and
factually sufficient to support the trial court=s
finding that Horton did not regularly visit or maintain significant contact
with S.S.

                    Has
Horton Demonstrated An Inability To Provide A Safe Environment?

Horton points to the fact that he has held the
same job for five years and has lived in the same house for sixteen.  He notes that he never failed a drug test and
that his neighbor has never had any problems with Horton or his friends.  This is some evidence of stability, but there
was considerable evidence that Horton=s
home would not be a safe environment for S.S.

Horton=s
family service plan required him to stay away from people with a criminal
history. He did not do this.  Horton=s brother, Durrell Horton, has lived
with him subsequent to S.S.=s
birth.  Durrell has been convicted of
sexual assault of a child.  Horton=s cousin, Sammy Desmond Johnson, also
lived with Horton for approximately six months while S.S. was in foster
care.  Johnson was arrested for theft in
the summer of 2004 and has been in prison for sexual assault and drug
charges.  

Horton admitted that the Department told him he
needed to Akeep away
the gang bangers and the drug dealers@
from his house.  He admitted that he had
gang bangers and drug dealers coming over to his house Aabout
two or three times a day, whenever they was in the neighborhood.@ 
The Department discovered that Horton was in a gang and that all of his
friends were in gangs.  His house had a
sign which warned other gangs to stay away.[3]








Salazar claimed that she and Horton smoked
marihuana together and that he provided her with crack cocaine twice during her
pregnancy.  She testified that he also
provided her with crack cocaine three months after she gave birth to S.S.  Salazar testified that Horton=s friends were drug users and that most
of them were gang members and dope dealers.

Horton has suffered from financial problems since
S.S.=s
birth.  He has been behind on his rent
and has had his gas, electricity, and water turned off for not paying his
bills.  Horton acknowledged that it could
be dangerous for S.S. if she lived with him and his utilities were turned off.

The Department representatives testified that they
talked to Horton about the friends he had coming in and out of his house.  They encouraged him to change his social
network.  The Department was concerned
about drug and crime problems.  The
Department was also concerned that Horton was unable to financially provide for
S.S. and that he lacked basic parenting abilities.  The Department representatives described his
difficulty understanding how to prepare a bottle and change a diaper.  Horton was provided frequent training on
these issues, but he had difficulty retaining the concepts from week to
week.  Horton was told that it was his
responsibility during a visitation session to feed S.S. and change her
diaper.  He would tell the Department
representatives that he had done so. 
However, the Department representatives reported that it was obvious
that her diaper had not been changed and that she had not been fed.

S.S.=s
caseworker talked to Horton about day care. 
Horton advised her that he had friends who could watch S.S.  The caseworker attempted to explain that this
was not suitable because Horton did not have any reliable friends that he could
count on from day-to-day and that S.S. needed more structure, but he did not
ever seem to understand the severity of the situation.

The Department also was concerned about Horton=s house because it had dangerous
conditions for small children.  A front
window was broken out, and the glass had been replaced with peg board.  The Department representatives found lighter
fluid and an open book of matches beside it on the ground.  The trash can was full of beer bottles.  The Department noticed no preparations being
made for having a small child in the home. 
Horton never obtained a bed or other things a small child would need.








The evidence is legally and factually sufficient
to support the trial court=s
finding that Horton was unable to provide S.S. with a safe environment.  In light of our previous holdings, the
evidence is legally and factually sufficient to support the trial court=s finding that Horton constructively
abandoned S.S.  Horton=s first issue is overruled.

                                                Is
Termination In S.S.=s
Best Interest?

There is a strong presumption that the best
interest of the child is served by keeping custody in the natural parent.  In re D.M., 58 S.W.3d 801, 814 (Tex.
App.CFort
Worth 2001, no pet.).  The factors which
a court should consider when determining the best interest of the child
include: (1) the desires of the child; (2) the emotional and physical needs of
the child now and in the future; (3) the parental ability of the individuals
seeking custody; (4) the programs available to assist these individuals to
promote the best interest of the child; (5) the plans for the child by these
individuals or by the agency seeking custody; (6) the stability of the home or
proposed placement; (7) the acts or omissions of the parents which may indicate
that the existing parent-child relationship is not a proper one; and (8) any
excuse for the acts or omissions of the parent. 
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  Best interest does not require proof of any
unique set of factors, nor does it limit proof to any specific factors.  In re D.M., 58 S.W.3d at 814.

The Department placed S.S. with a foster family,
the Shermans, shortly after her birth. 
The Department=s
plan is for the foster family to adopt S.S. 
Children need stability and structure. 
See Salas v. Tex. Dep=t
of Protective and Regulatory Servs., 71 S.W.3d 783, 792 (Tex. App.CEl Paso 2002, no pet.).  The Shermans demonstrated that they have
both.  They have been married for ten
years and have three sons.  Mr. Sherman
is the general manager of a car dealership group.  Mrs. Sherman is a stay-at-home mother.  They also demonstrated their ability to care
and provide for S.S.  Mrs. Sherman was
required to carry S.S. in a baby sling for twenty-two or twenty-three hours a
day when she was first born because S.S. was exposed to drugs in utero and had
no prenatal care.[4]  This resulted in S.S. weighing just over five
pounds and having a very strong startle reflex. 
At trial, S.S. was in the ninety-fifth percentile for weight and height
and was doing well developmentally.  She
recognizes Mr. and Mrs. Sherman as her parents.








Using the factors from Holly, 544 S.W.2d at
371-72, we find that this evidence, coupled with the evidence of constructive
abandonment previously discussed, is legally and factually sufficient to
support the trial court=s
finding that termination of the parent-child relationship between Horton and S.S.
was in the child=s best
interest.  Horton=s
second issue is overruled.

                                                                     Conclusion

We have considered each of Horton=s issues, and each is overruled.  Accordingly, the judgment of the trial court
is affirmed.

 

RICK STRANGE

JUSTICE

 

May 11, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and, Strange, J.











     [1]The
first was dated October 28, 2003.  The
second, June 23, 2004; and the last, October 19, 2004.





     [2]Horton=s family service plans required him to submit to drug
screening.  Horton took and passed one
test.  He refused subsequent requests for
a UA.





     [3]The
sign said, A[N]o set tripping.@  According to Horton, this means Adon=t trespass on another gangster=s territory.@ 





     [4]The
Department records indicated that S.S. tested positive for methamphetamine and
cocaine at birth.