*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-11-00115-CV

**IN THE INTEREST OF S.L.L.**, a Child

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2010-PA-00704
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:   Karen Angelini, Justice
   Rebecca Simmons, Justice
   Marialyn Barnard, Justice

Delivered and Filed:  August 31, 2011

AFFIRMED

This is an appeal from the trial court's order terminating Appellant Raven Riley's parental rights to her child, S.L.L.  The Department of Family and Protective Services filed suit to terminate Riley's parental rights to S.L.L. following a shooting that occurred in Riley's apartment while S.L.L. was present.  Following a non-jury trial, the trial court terminated Riley's parental rights.  Pursuant to section 236.405 of the Family Code, Riley timely filed a motion for new trial, a statement of appellate points, and an affidavit of indigence.  *See* TEX. FAM. CODE ANN. § 263.405 (West 2008).  In her statement of appellate points, Riley asserted that the evidence was factually insufficient to sustain a finding that termination is in the best interest of

S.L.L. After a hearing, the trial court denied Riley's request for a new trial and found her points of appeal to be frivolous. We affirm the trial court's order.

**FRIVOLOUS APPEAL**

## A. Standards of Review

### 1. Clear and Convincing Evidence

A trial court may involuntarily terminate a parent–child relationship if it finds by clear and convincing evidence that: (1) the parent has committed at least one of the acts prohibited under section 161.001(1) of the Family Code; and (2) termination of the relationship is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West 2008); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Although the two elements must be proven independently, "the same evidence may be probative of both issues." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Under the Family Code, clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *accord In re T.N.S.*, 230 S.W.3d 434, 438 (Tex. App—San Antonio 2007, no pet.).

### 2. Review of Frivolousness Determination

"[If a] trial court determines that an appeal is frivolous, the scope of appellate review is statutorily limited to a review of the trial court's frivolousness finding." *In re K.D.*, 202 S.W.3d 860, 865 (Tex. App.—Fort Worth 2006, no pet.) (citing TEX. FAM. CODE ANN. § 263.405(g) (West 2008)). "In determining whether an appeal is frivolous, a judge may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (West 2002); *see* TEX. FAM. CODE ANN. § 263.405(d)(3) (West 2008). We review a trial court's determination that an appeal would be frivolous for an abuse of

discretion. *In re K.D.*, 202 S.W.3d at 866. "A trial [court] abuses [its] discretion if [it] acts without reference to any guiding rules or principles," or acts arbitrarily and unreasonably under the circumstances. *See In re H.R.*, 87 S.W.3d 691, 702 (Tex. App.—San Antonio 2002, no pet.). Riley contends the trial court abused its discretion in finding her factual sufficiency appellate point as frivolous.

### 3. Factual Sufficiency

In reviewing factual sufficiency, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing" and inquire "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (quoting *In re C.H.*, 89 s.W.3d 17, 25 (Tex. 2002)); *accord In re B.T.*, 954 S.W.2d 44, 46 (Tex. App.—San Antonio 1997, writ denied). We "consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. "[A] finding is sustained if there is sufficient competent evidence of probative force to support it." *In re H.R.*, 87 S.W.3d at 699. The trial court found all of Riley's points of appeal to be frivolous including the point at issue in this appeal that the evidence was factually insufficient to support a finding that termination was in S.L.L.'s best interest.

## B. S.L.L.'s Best Interest

Riley argues that the evidence is factually insufficient to support a finding that termination is in S.L.L.'s best interest because the only expert testimony admitted at trial supported the contrary proposition. She does not contest the trial court's finding that she knowingly placed or allowed S.L.L. to remain in conditions or surroundings that endangered S.L.L.'s well-being and engaged in conduct, or knowingly placed S.L.L. with persons who

engaged in conduct that endangered S.L.L.'s well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E) (West 2008).

### 1. *Applicable Law*

When considering the best interest of the child, the following non-exhaustive list of factors are considered:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by [those] seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent–child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parents.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (internal footnotes omitted); *accord In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.). "We need not decide each of these factors against a parent to find that termination is in the child's best interest." *In re A.I.G.*, 135 S.W.3d at 692–93.

### 2. *Analysis*

The termination proceedings were instituted as a result of a shooting that occurred in Riley's apartment. In April 2010, Riley had a male visitor at her apartment. S.L.L.'s father entered Riley's apartment and began shooting the visitor. Riley fled the scene, leaving eight-month-old S.L.L. on the bed in the master bedroom. Riley stated that she left S.L.L. because she did not believe S.L.L.'s father would hurt her. However, S.L.L.'s father shot the victim three times, and the last shot was to the victim's face and fired right next to the bed where Riley had left S.L.L. The incident prompted the Department to file its petition to terminate Riley's parental rights to S.L.L. Riley characterizes the Department's actions as unfair because the termination suit was originally based solely on S.L.L.'s father's actions rather than any actions by Riley.

However, the evidence presented at trial was not limited to this incident but also included evidence that Riley's other children endured a similar pattern of exposure to abuse and domestic violence.

Riley is the mother of three children other than S.L.L. Her parental rights to her first two children were terminated due to her knowing placement of those children in surroundings and with persons dangerous to their physical and emotional well-being. When Riley's first child, X.I., was removed at approximately eight months of age, he had a skull fracture, two broken arms, a broken clavicle, bruises all over his body, and signs of forced feeding/cuts around his mouth. Riley pled guilty and was convicted of the felony offense of injury to a child with serious bodily injury, and was sentenced to ten years' community supervision. Importantly, as part of her probation, Riley is not permitted to have unsupervised contact with any child.

Although Riley's third child, J.I., was removed from Riley, her parental rights to J.I. were not terminated. The State appointed a therapist, Judy Dickey, to work with Riley. Despite working with Dickey for eight months, Riley testified that she believes it is best that J.I. continue to live in foster care.

A Department caseworker, Sabrina Bedford, testified that based on her evaluation of Riley, termination was in S.L.L.'s best interest. Bedford testified that Riley was not granted a service plan in the instant case because of her previous violations of the Family Code subsections 161.001(1)(D) and (E) and the "aggravated circumstances" leading to S.L.L.'s removal. *See* TEX. FAM. CODE ANN. § 161.001(1) (West 2008). Bedford testified that the services provided to Riley, aimed at correcting the reasons for the removal of her other children, proved unsuccessful because there continued to be similar occurrences with S.L.L. Bradford noted there had been multiple domestic violence situations with S.L.L.'s father including the father's display of a gun

in front of Riley. Bedford testified that the shooting incident fit the same domestic violence pattern that had occurred in Riley's previous Department cases.

Bedford also testified that S.L.L. has a permanent medical condition called hydrocephalus, requiring serious medical attention for the rest of her life and for which S.L.L. has already had one surgery. In Bedford's opinion, based on Riley's previous cases, the unsuccessful attempts at service plans, the instability of the home, Riley's history of domestic violence, and the serious medical needs of S.L.L., termination was in S.L.L.'s best interest.

Riley argues that the testimony of her therapist, Judy Dickey, establishes that termination was not in the best interest of S.L.L., and that a substantial question for appellate review was presented on the sufficiency of the evidence. Dickey initially testified that she believed it was not in S.L.L.'s best interest to terminate the parent–child relationship. Dickey testified that she had only observed Riley with S.L.L. on one visit that lasted two hours. Dickey believed that with more time and therapy Riley would be able to parent S.L.L. She also testified that "in-home services would be very helpful" to Riley. However, at trial Dickey admitted she did not know that Riley had been previously provided in-home services that had proved unsuccessful. More importantly, Riley had not shared with Dickey the extent of the injuries to X.I. Rather, Riley had explained to Dickey that X.I. had suffered a broken arm as a result of an accident. Dickey was neither aware of X.I.'s multiple broken bones and skull fracture, nor did she know that his body was covered in bruises at the time he was removed. After learning the additional information about Riley and her children, Dickey stated that, in terms of her evaluation assessment of reunification with S.L.L., the new information "cause[d] [her] pause."

## CONCLUSION

From the evidence presented at trial, we conclude that the trial court did not abuse its discretion in determining that Riley's factual sufficiency challenge did not present a substantial question for appellate review and was, therefore, frivolous. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b). Accordingly, we affirm the trial court's order terminating Riley's parental rights to S.L.L.

Rebecca Simmons, Justice