# Supreme Court of Texas

<hr>

No. 19-1069

<hr>

In the Interest of J.W., a Child

<hr>

On Petition for Review from the
Court of Appeals for the Tenth District of Texas

<hr>

JUSTICE BOYD, dissenting.

Texas law protects unborn children through a diverse array of statutes, ranging from the Estates Code to the Penal Code.[1] The Family Code is no exception,[2] including—as the Court affirms today, *ante* at ___—section 161.001, which authorizes courts to terminate a

<hr>

[1] *See, e.g.*, TEX. EST. CODE § 201.056 (protecting the "right of inheritance" for persons "in gestation at[] the time of the intestate's death"); TEX. HEALTH & SAFETY CODE § 171.203(b) (prohibiting physicians from knowingly "perform[ing]" or "induc[ing]" abortions if an unborn child's "fetal heartbeat" is detectable); TEX. OCC. CODE § 164.052(a)(16) (authorizing disciplinary action against medical licensees who perform "criminal abortions"); TEX. PENAL CODE § 1.07(a)(26) (defining "Individual" as "including an unborn child at every stage of gestation from fertilization until birth").

[2] *See, e.g.*, TEX. FAM. CODE § 160.756(b)(2) (requiring that surrogate gestational agreements include medical evidence showing the intended mother can carry the pregnancy to term "without unreasonable risk . . . to the unborn child").

parent-child relationship. Of the twenty-one predicate grounds that section 161.001(b)(1) provides for termination, two explicitly protect children from harm they may face before they are born,[3] and others at least implicitly do the same.[4] What should not get lost in today's decision is the Court's important holding that Family Code section 161.001(b)(1)(D) protects *unborn* children from dangerous conditions caused by their parents. *Ante* at ___.[5]

---

[3] *See id.* § 161.001(b)(1)(H) (authorizing termination where a father knowingly abandons a pregnant mother), (R) (authorizing termination where a parent causes their child to be "born addicted to alcohol or a controlled substance").

[4] *See, e.g.*, *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (concluding sufficient evidence supported termination under subsection (P) because mother used a controlled substance in a manner that endangered her unborn child).

[5] Section 161.001 allows termination if clear and convincing evidence establishes at least one of twenty-one predicate grounds and that termination of the parent-child relationship is in the child's best interest. TEX. FAM. CODE § 161.001(b). When addressing section 161.001(b)(1), we have generally avoided navigating the imprecision between subsection (D)'s endangering "conditions" and subsection (E)'s endangering "conduct" by tacitly conflating the two and finding generic "endangerment" without specifying the statutory ground. *See, e.g.*, *In re S.M.R.*, 434 S.W.3d 576, 585–86 (Tex. 2014) (simultaneously analyzing (D) and (E)—"the endangerment grounds"—and affirming termination order without stating which ground applied); *In re M.C.*, 917 S.W.2d 268, 269–70 (Tex. 1996) (per curiam) (quoting both (D) and (E) before holding evidence of endangerment was legally sufficient without specifying whether (D), (E), or both applied). We have previously held that subsection (E) protects unborn children from dangerous conduct, whether by their fathers or their mothers. *See In re J.O.A.*, 283 S.W.3d 336, 345–46 (Tex. 2009) (affirming subsection (E) termination of rights of father who used drugs daily and committed domestic violence against mother during her pregnancy because "endangering conduct may include the parent's actions before the child's birth"). We may need to distinguish the two subsections in some future case, but we need not do so to decide this case. Any statutory imprecision that

Unfortunately, the Court then guts that protection in this case by ignoring evidence of such endangerment.[6] As the Court acknowledges, the inquiry into whether a parent endangered his unborn child "is necessarily dependent on the facts and circumstances" in each case. *Ante* at ___. And in this case, at least some evidence established that Father repeatedly minimized, denied, and enabled Mother's conspicuous and continuous drug use throughout her pregnancy, which undoubtedly made her womb a dangerous environment for the child. *See In re J.W.S.*, No. 06-14-00018-CV, 2014 WL 3013352, at *6 (Tex. App.—Texarkana 2014, no pet.) ("Endangerment can . . . include knowledge that a child's mother abused drugs," such as when father "was aware" of mother's drug use and "chose to look the other way instead of forcing [her] to seek help." (citation omitted)). As the court of appeals noted, at least some evidence established that Father "was aware of [Mother's] problems with illegal substances" during her pregnancy and "was untruthful" with the Department about her addiction, "exhibit[ing] a pattern of . . .

---

blurs the line between (D) and (E) does not foreclose the conclusion that a father may "place" an unborn child in dangerous conditions *through* his dangerous conduct. *See In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) ("[P]arental conduct can be a factor that contributes to environment."); *see also In re R.S.*, No. 12-21-00029-CV, 2021 WL 2816403, at *5–6 (Tex. App.—Tyler June 30, 2021, no pet.) (affirming termination of father's rights under both (D) and (E) based, in part, on father's drug use with mother during mother's pregnancy).

[6] For the reasons the Court explains, *see ante* at ___, I agree the evidence here sufficiently supports the jury's findings that Father failed to comply with his service plan under subsection 161.001(1)(b)(O) and that termination is in the child's best interest.

denial about the extent" of her addiction and "minimiz[ing] her substance abuse problems." 627 S.W.3d 662, 670, 672 (Tex. App.—Waco 2019).

For example, some evidence established that Father permitted Mother's "friend," who was recently released from prison, to stay in their home while Mother (who herself was, at that time, a recovering drug addict at best) was eight months pregnant with the child, and that this friend "overdosed on something" and required emergency medical care while staying in their home. *See In re B.R.*, 822 S.W.2d 103, 107 (Tex. App.—Tyler 1992, writ denied) (holding that inappropriate or unlawful conduct by persons living in a home with the child is part of the child's "conditions or surroundings" within the ambit of (D)). Father explained that he didn't want Mother's "friend" to stay in their home but allowed him to stay because Father "didn't have the heart to tell [Mother] no."

And as Father acknowledged, Mother left a drug-rehab facility around her fourth month of pregnancy, before she completed the program, because the facility "wouldn't let her take" promethazine with codeine, an opiate. Yet Father left Mother alone for much of the next three months—most of the child's second trimester—knowing that she rejected further treatment and did so for that reason.

To be sure, Father testified that he was away from Mother during that time due to necessary work-related travel, and generally claimed that he did all he could reasonably do to protect the child. And in determining whether legally sufficient evidence supports the jury's finding, we must consider that (and any other) contrary evidence along with the evidence that supports the jury's verdict. *In re J.P.B.*, 180

4

S.W.3d 570, 573 (Tex. 2005) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005)). But the jury was free to disbelieve Father's testimony, and we must defer to the jury's credibility determinations so long as those determinations are not unreasonable. *Id.* (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)). Considering the evidence that, after the child was born, Father helped Mother fake the results of a drug test by providing her with his urine sample to use in lieu of her own, the jury could have reasonably found Father lacked credibility and doubted his entire testimony. *Id.* at 574 ("It was within the jury's province to judge [father]'s demeanor and to disbelieve his testimony . . . ."). We might not have doubted his testimony had we been on the jury, but that does not establish that no reasonable juror could have done so.

Sadly, the Court completely nullifies the Family Code's protection for unborn children by substituting its own view for that of the jury. While considering all the evidence, we must review it not to decide whether *we* are convinced that Father placed his child in dangerous conditions or surroundings under subsection (D) or exposed him to dangerous conduct under subsection (E), but simply to "determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). And to make that determination, we must review the evidence "in the light most favorable" to the jury's findings and assume the jury resolved any disputed facts in favor of its finding if a reasonable juror could have done so. *Id.* In the end, we must uphold the jury's finding unless we conclude that no reasonable juror could have formed

a firm belief or conviction that Father subjected his child to dangerous conditions or conduct. *Id.* On this record, and because subsections (D) and (E) protect unborn children as well as children after their birth, I cannot reach that conclusion.

The Legislature did not choose to enumerate what obligations fathers owe to prevent endangerment of their unborn children, and we cannot speak into that silence to invent such a list. The Court offers examples of how a father might "actively participate[]" in endangering his unborn child, *ante* at ___, but fails to recognize that pre-birth endangerment need not be active at all. Subsections (D) and (E) authorize termination not just when a parent places the child in dangerous conditions or engages in conduct that endangers the child, but also when a parent knowingly allows the child to remain in dangerous conditions or places the child with others who engage in conduct that endangers the child. TEX. FAM. CODE § 161.001(b)(1)(D), (E). Even when a father is not himself creating danger for his unborn child, subsections (D) and (E) require that he do *something*.[7] Here, at least some evidence supports a finding that when Father should have intervened, he enabled; that when he should have acted, he allowed.

---

[7] *See, e.g., In re M.J.F.*, No. 06-05-00113-CV, 2006 WL 2522200, at *10 (Tex. App.—Texarkana 2006, no pet.) (affirming termination of father's rights under subsection (D) where he allowed child to remain with mother despite knowledge of her drug use); *In re S.K.*, 198 S.W.3d 899, 906–07 (Tex. App.—Dallas 2006, pet. denied) (affirming termination of rights of father who left his children with mother despite knowing her conduct was endangering them); *Castaneda v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 509, 524–26 (Tex. App.—El Paso 2004, pet. denied) (affirming termination of mother's rights under (D) because she left child with father knowing he was dangerous and refused to separate in an effort to regain custody of her son).

I join the Court's refusal to "attribute[] any and all known danger" an unborn child faces to the father, *ante* at ___, but I cannot join the Court in second-guessing the jury's findings. Regardless of what we might have concluded, a reasonable juror could have concluded that Father's actions and inaction were sufficient to establish that he knowingly placed or allowed his unborn child to remain in dangerous conditions or surroundings and exposed him to dangerous conduct.

The Court recognizes the dangerous conditions and conduct the child faced before he was born, and even acknowledges that the jury "may have reasonably concluded that Father could have better handled the difficult situation." *Ante* at ___. Yet the Court rejects the jury's finding that termination was appropriate under subsection (D) and chooses not to reach the issue of whether termination was appropriate under subsection (E). *Ante* at ___. Instead, it holds that because the jury was asked about subsections (D), (E), and (O) in a single, broad-form question, we must remand for a new trial under *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). *Ante* at ___. Because I conclude that legally sufficient evidence supports the jury's findings under all three subsections, I would affirm. I therefore respectfully dissent.

Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** May 27, 2022

7