In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00129-CR


______________________________




EARL RAY WEAVER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Red River County, Texas


Trial Court No. CR01102




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Earl Ray Weaver appeals from his conviction by a jury for the offense of indecency with a
child. See Tex. Penal Code Ann. § 21.11(a)(1) (Vernon 2003). (1) The trial court sentenced Weaver
to twenty years' imprisonment. Weaver was represented by different, appointed, counsel at trial and
on appeal. Weaver's attorney has filed a brief in which he concludes that the appeal is frivolous and
without merit, after a review of the record and the related law.

 Counsel states that he has studied the record and finds no error preserved for appeal that
could be successfully argued. The brief contains a professional evaluation of the record and
advances six arguable grounds for review. This meets the requirements of Anders v. California, 386
U.S. 738 (1967); Stafford v. State, 813 S.W.2d 503 (Tex. Crim. App. 1991); and High v. State, 573
S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

 Counsel mailed a copy of the brief to Weaver on August 20, 2008, informing Weaver of his
right to examine the entire appellate record and to file a pro se response. Counsel simultaneously
filed a motion with this Court seeking to withdraw as counsel in this appeal. Weaver filed his pro se
response October 13, 2008. 

 We have determined that this appeal is wholly frivolous. We have independently reviewed
the clerk's record and the reporter's record, and we agree that no arguable issues support an appeal. 
See Bledsoe v. State, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005).

 As noted previously, however, the trial court's judgment in this case indicates the statute for
the offense is "22.11(a)(1) Penal Code." This Court has the authority to reform the judgment to
make the record speak the truth when the matter has been called to our attention by any source. See
French v. State, 830 S.W.2d 607 (Tex. Crim. App. 1992). In Asberry v. State, 813 S.W.2d 526 (Tex.
App.--Dallas 1991, pet ref'd), the court noted that the authority of the appellate court to reform
incorrect judgments is not dependent on request of any party; the appellate court may act sua sponte. 
The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the
judgment of the trial court. See Tex. R. App. P. 43.2.

 Therefore, we hereby reform the judgment to indicate the correct statute for the offense: 
Tex. Penal Code Ann. § 21.11(a)(1). 


 As reformed, we affirm the judgment of the trial court. (2)



 Jack Carter

 Justice


Date Submitted: November 3, 2008

Date Decided: November 12, 2008


Do Not Publish


1. We note that the judgment indicates the statute for the offense is Tex. Penal Code Ann.
§ 22.11(a)(1). The correct statute is Tex. Penal Code Ann. § 21.11(a)(1).
2. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Weaver in this case. No substitute
counsel will be appointed. Should Weaver wish to seek further review of this case by the Texas
Court of Criminal Appeals, Weaver must either retain an attorney to file a petition for discretionary
review or he must file a pro se petition for discretionary review. Any petition for discretionary
review must be filed within thirty days from the date of either this opinion or the last timely motion
for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition for
discretionary review must be filed with this Court, after which it will be forwarded to the Texas
Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. 
Any petition for discretionary review should comply with the requirements of Rule 68.4 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 68.4.


ut after entry of judgment. She stated she treated the documents "as a request for
continuance and a request for counsel, and thereupon I appointed Mr. Dunn as counsel." However,
this appointment did not occur until January 2 or 3, 2007. (5)

 In the interim, the clerk filed all of Chad's documents on December 12, the day after trial and
the day after the order of termination had been entered. The clerk apparently responded to Chad on
December 18, informing him that his letter had arrived after judgment. Chad responded on
December 21 in letters to the judge and the clerk that he still had no counsel and reasserted
indigence, requested appointment of counsel, asked that his motion be filed anyway and
reconsidered, requested a copy of the record, and requested copies of the relevant law, including
post-termination rights. This correspondence was not filed until January 3, 2007.

 Counsel filed a notice of appeal January 3, the day he was appointed. Counsel filed "points
for appeal" and a motion for new trial and to set aside default the next day (January 4). After a
hearing, the court found Chad indigent, denied his motion for new trial, and found Chad presented
nonfrivolous grounds for appeal.



II. Family Code § 263.405(d)(3) Constitutional Challenge

 Chad contends that Section 263.405(d) of the Texas Family Code (6)--which presents the
procedure by which the trial court holds the hearing on a motion for new trial, determines indigence,
and determines the frivolousness of an appeal--is unconstitutional, facially and as applied, because
it reserves the frivolousness determination to the trial court instead of the court of appeals. However,
in this case, the court (1) conducted a timely hearing on Chad's motion for new trial, (2) determined,
as requested, that Chad was indigent, and (3) determined that Chad's appeal was not frivolous. 

 We are prohibited from issuing an advisory opinion, the distinctive feature of which is that
it decides an abstract question of law without binding the parties. See Tex. Const. art. II, § 1; Valley
Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821 (Tex. 2000); Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998); Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex.
1993); Coastal Marine Serv. of Tex. v. City of Port Neches, 11 S.W.3d 509, 515 (Tex.
App.--Beaumont 2000, no pet.). "The ripeness doctrine conserves judicial time and resources for
real and current controversies, rather than abstract, hypothetical, or remote disputes. In this regard,
the State ripeness doctrine is similar to the federal ripeness doctrine in that it has both constitutional
and prudential dimensions." Mayhew, 964 S.W.2d at 928. Because Chad's constitutional challenge
to subsection (d) is not ripe, we overrule this point of error.


III. Statement of Points Constitutional Challenge 

 A. Jurisdiction

 An appellate court reviewing a termination of parental rights on the State's petition "may not
consider any issue that was not specifically presented to the trial court in a timely filed statement of
the points on which the party intends to appeal . . . ." Tex. Fam. Code Ann. § 263.405(i)
(subsection (i)). To be timely, the statement of points must be filed within fifteen days of the date
of the final order. Tex. Fam. Code Ann. § 263.405(b) (subsection (b)). 

 Section 263.405, including subsection (i), does not operate, in the absence of a timely filed
statement of points, to deprive this Court of jurisdiction over the appeal. In re H.H.H., No. 06-06-00093-CV, 2006 WL 2820063, at *1 (Tex. App.--Texarkana Oct. 4, 2006, no pet.) (mem. op.); see
also Tex. Fam. Code Ann. § 109.002 (expressly allowing appeal to courts of appeals); Tex. Fam.
Code Ann. § 263.405(a) (Vernon Supp. 2006) (same). Rather, when a parent fails to preserve a
complaint in a timely filed statement of points, we are constrained to affirm that part of the
judgment. See H.H.H., 2006 WL 2820063, at *1. This is the approach taken by each of the fourteen
courts of appeals, who have all either expressly found that subsection (i) does not deprive appeals
courts of jurisdiction, (7) or, though not expressly finding subsection (i) nonjurisdictional, have
affirmed on the waived or unpreserved merits rather than dismissing for lack of jurisdiction. (8) But
see In re C.R., No. 02-06-00099-CV, 2006 WL 3114468, at *1 (Tex. App.--Fort Worth Nov. 2,
2006, no pet.) (Livingston, J., concurring) (stating that Legislature's addition of subsection (i)
supersedes earlier holdings that subsection (b) is not jurisdictional). 

 Chad's statement of points was due, under subsection (b), December 26, 2006. It was not
filed until January 4, 2007. Under these facts, we would ordinarily, per the authority above, not
address Chad's points of error on appeal and affirm the judgment. Chad, however, raises a
constitutional challenge to subsections (b) and (i); specifically, he urges that those sections in
combination and as applied to him--an indigent parent without counsel, despite a request for
statutorily mandated appointed counsel--have deprived him of the meaningful judicial review
required under federal due process and Texas due course of law guarantees. See U.S. Const. amend.
XIV; Tex. Const. art. I, § 19. We are aware of the "cardinal principle" of judicial restraint that we
should not address constitutional issues if it is not necessary. Van Devender v. Woods, 222 S.W.3d
430, 432-33 (Tex. 2007). However, in this case we are prevented from addressing issues that might
be dispositive unless we first decide whether the statute forbidding the consideration of tardy points
on appeal is unconstitutional as applied in these circumstances.

 B. Preservation of Error

 An "as applied" constitutional challenge is waived if not raised at the trial court level. See
In re L.M.I., 119 S.W.3d 707, 711 (Tex. 2003); R.B., 225 S.W.3d at 802; In re B.S.W., 87 S.W.3d
766, 771-72 (Tex. App.--Texarkana 2002, pet. denied), overruled subsilentio, on other grounds,
In re A.V., 113 S.W.3d 355 (Tex. 2003). Chad raised his constitutional challenges at the trial court
level in his timely motion for new trial as well as in his untimely statement of points. The trial court
heard argument on the issue at the hearing on the motion for new trial. Thus, the issue has been
preserved. (9) 



 C. Due Process and Due Course--As Applied

 "A law nondiscriminatory on its face may be grossly discriminatory in its operation." Griffin
v. Illinois, 351 U.S. 12, 17 n.11 (1956). An "'as applied challenge' only requires the challenger to
demonstrate that the statute operates unconstitutionally when applied to the challenger's particular
circumstances." B.S.W., 87 S.W.3d at 769. In an "as applied" challenge the argument is that a
statute, even though generally constitutional, operates unconstitutionally concerning a person
because of that person's particular circumstances. Tex. Workers' Comp. Comm'n v. Garcia, 893
S.W.2d 504, 518 (Tex. 1995).

 1. Statutory Construction

 As a starting point in assessing an "as applied" challenge:

 If possible, we construe a statute in a manner that renders it constitutional and gives
effect to the Legislature's intent. . . . In construing the statute and its effect, we
consider several factors, including: the statute's purpose; the circumstances of the
statute's enactment; the legislative history; common-law or former statutory
provisions, including laws on the same or similar subjects; a particular construction's
consequences; administrative construction of the statute; and the title, preamble and
emergency provision.

Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n, 74 S.W.3d 377,
381 (Tex. 2002) (citations omitted). Of particular relevance here in determining the constitutionality
of subsections (b) and (i), as combined and applied to Chad, are the first four factors. 

 Section 263.405's purpose is to establish accelerated procedures for appeal of parental rights
termination cases so as to "decrease the amount of time that abused or neglected children have to
spend in foster care." Senate Comm. on Health & Human Servs., Bill Analysis, Tex. H.B. 409, 79th
Leg., R.S. (2005). 

 The express purpose of section 263.405 is to eliminate frivolous appeals in
termination cases, reduce the costs associated with such appeals, and dispose of the
appeals "with the least possible delay." The statute is not intended to bar appeals that
raise meritorious complaints, nor is it intended to prevent appellate courts from
conducting meaningful review of such complaints. 

 In re M.R.J.M., 193 S.W.3d 670, 675 (Tex. App.--Fort Worth 2006, no pet.) (quoting Tex. Fam.
Code Ann. § 263.405(a)).

 Essentially, the statute fast-tracks these appeals while requiring appellants to present their
issues to the trial court as well, so that the trial court may correct any "mistakes that could have been
quickly and easily corrected" and thus eliminate the need for appeal altogether. House Comm. on
Juv. Just. & Fam. Issues, Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. (2005). The legislative
history of subsection (i) indicates it was enacted in response to "recent appellate decisions [that]
effectively repealed the Legislature's attempt to address the post-judgment delay issue." Id. The
history indicates that the amendment was intended to "conclusively establish that the Legislature
expects litigants to comply" with the statement of points requirement in subsection (b). Id.; see also
In re E.A.R., 201 S.W.3d 813, 815 (Tex. App.--Waco 2006, no. pet.) (Gray, J., concurring) (listing
cases, pre-subsection (i), in which courts held issues not waived for failure to comply with
subsection (b)). 

 The construction forwarded by the State--that an appellate court is barred from reviewing
any points of error not included in a timely filed statement of points--is consistent with the statute's
purpose, circumstances of enactment, and legislative history, as well as with common law and
former statutory provisions. We can imagine no construction of subsection (i) that would give effect
to its legislative intent while allowing Chad's issues, which had not been raised in a timely filed
statement of points, to be addressed in this appeal. (10) We thus turn to Chad's constitutional challenge.

 2. Due Process and Due Course, Generally

 The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty,
or property, without due process of law." U.S. Const. amend. XIV. The Texas Constitution
provides that: "No citizen of this State shall be deprived of life, liberty, property, privileges or
immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex.
Const. art. I, § 19. The Texas "due course" and federal "due process" provisions have been
interpreted to be "without meaningful distinction." Univ. of Tex. Med. Sch. v. Than, 901 S.W.2d
926, 929 (Tex. 1995) (citing Mellinger v. City of Houston, 68 Tex. 37, 3 S.W. 249, 252-53 (1887)). 
Therefore, in matters of procedural due process, Texas courts have traditionally followed
contemporary federal due process interpretations of procedural due process issues. See Than, 901
S.W.2d at 929. Our role is to determine "whether the procedures meet the essential standard of
fairness under the Due Process Clause." Landon v. Plasencia, 459 U.S. 21, 34-35 (1982).

 3. Constitutionally Protected Interest

 "In asserting a due course of law claim, [the appellant] must establish that his interest is
constitutionally protected." In re J.W.T., 872 S.W.2d 189, 194 (Tex. 1994). The "interest of parents
in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty
interests recognized." Troxel v. Granville, 530 U.S. 57, 65 (2000); see also Meyer v. Nebraska, 262
U.S. 390 (1923) (due process "liberty" encompasses "the right of the individual to . . . bring up
children"); J.W.T., 872 S.W.2d at 195. Thus, the interest in fair procedures in adjudicating a parent's
interest in maintaining a relationship with his or her children is a strong one. As stated by the United
States Supreme Court:

 The fundamental liberty interest of natural parents in the care, custody, and
management of their child does not evaporate simply because they have not been
model parents or have lost temporary custody of their child to the State. Even when
blood relationships are strained, parents retain a vital interest in preventing the
irretrievable destruction of their family life. If anything, persons faced with forced
dissolution of their parental rights have a more critical need for procedural
protections than do those resisting state intervention into ongoing family affairs.
When the State moves to destroy weakened familial bonds, it must provide the
parents with fundamentally fair procedures.


Santosky v. Kramer, 455 U.S. 745, 753-54 (1982); see also In re B.L.D., 113 S.W.3d 340, 351-52
(Tex. 2003). 

 4. Other Relevant Precedent

 We also, in conducting a due-process analysis, examine other relevant precedent. See M.L.B.
v. S.L.J., 519 U.S. 102, 119 (1996). In analyzing Chad's challenge, we find relevant precedent in two
areas: (1) access to meaningful appeal, and (2) right to effective counsel in parental rights
termination proceedings.

 a. Meaningful Appeal

  The  Texas  Constitution  provides  that  courts  of  appeals  "shall  have  appellate
jurisdiction . . . which shall extend to all cases of which the District Courts . . . have original . . .
jurisdiction, under such restrictions and regulations as may be prescribed by law." Tex. Const. art.
V, § 6. The Legislature has expressly provided for appeals of termination cases. See Tex. Fam.
Code Ann. §§ 109.002, 263.405(a); In re M.S., 115 S.W.3d 534, 546 (Tex. 2003). 

 "Although the Federal Constitution guarantees no right to appellate review, once a State
affords that right . . . the State may not 'bolt the doors to equal justice.'" M.L.B., 519 U.S. at 111
(quoting Griffin, 351 U.S. at 24) (Frankfurter, J., concurring)). (11) "[B]ecause Texas provides the right
of an appeal from a judgment on parental-rights termination, part of the process of ensuring the
accuracy of judgments necessarily involves appellate review. . . . [I]f appellate review is permitted,
it must be allowed." M.S., 115 S.W.3d at 546-47; see also M.R.J.M., 193 S.W.3d at 676 n.26
("Once [the Legislature] has granted us jurisdiction over the appeals, however, it cannot interfere
with our constitutionally assigned powers for reviewing them"). 

 It is "fundamental that, once established, these avenues must be kept free of unreasoned
distinctions that can only impede open and equal access to the courts." M.L.B., 519 U.S. at 111
(quoting Rinaldi v. Yeager, 384 U.S. 305, 310 (1966)). Thus, the Legislature may not, "under the
guise of a statute relating to procedure, attempt to deprive any person of a right secured to him by
the constitution." Langever, 76 S.W.2d at 1029 (quoting 12 C.J. §§ 286, 291); see also 16 C.J.S.
Constitutional Law §§ 124, 130 (regulating appeals), 132 (1984) (legislative encroachment on
judiciary via procedural rules). Error preservation in the trial court, which is a threshold to appellate
review of parental rights termination cases, necessarily must be viewed through the due process
prism. See M.S., 115 S.W.3d at 546-47. A "rule governing preservation of a complaint" must be
reviewed under the procedural due-process analysis. Id. at 547.

 Not only must a parent be allowed to appeal the termination of his or her parental rights, but
that appeal must be meaningful. The Fourteenth Amendment requires that state procedures do not
extend to some an appeal that is only "a meaningless ritual" while others have a "meaningful appeal." 
Douglas v. California, 372 U.S. 353, 358 (1963). 



 b. Right to Counsel

 A second area of relevant precedent is the right to counsel. An indigent parent's right to
counsel in termination proceedings has generally been discussed by the United States Supreme Court
in Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 28-33 (1981). In Lassiter, the Supreme Court held
that the United States Constitution does not require the appointment of counsel in every parental
rights termination proceeding, though it may under certain circumstances. Id. at 31. The
determination of whether due process requires the appointment of counsel under the Fourteenth
Amendment in parental rights termination proceedings is to be made in the trial court, "subject, of
course, to appellate review." Id. at 32. Still, the Court noted that "wise public policy, however, may
require that higher standards be adopted than those minimally tolerable under the [federal]
constitution." Id. at 33. 

 The Texas Legislature has provided for such a higher standard; in Texas, an indigent parent
has a statutory right to counsel at a parental rights termination proceeding. See Tex. Fam. Code
Ann. § 107.013(a)(1) (Vernon Supp. 2006), § 263.405(e) (subsection (e)) (providing for counsel on
appeal); see also A.H.L., 214 S.W.3d at 51 ("Texas has adopted a higher standard"). The court is
required, at the trial level, to appoint counsel for "an indigent parent . . . who responds in opposition
to   the   termination"   requested   in   a   suit   by   a   governmental   entity.   Tex.   Fam.   Code
Ann.  § 107.013(a)(1). "To obtain such assistance, all the statute requires of an indigent parent is
to respond in opposition." In re J.C., 108 S.W.3d 914, 916 (Tex. App.--Texarkana 2003, no pet.). (12) 
At the appellate level, the statute provides: "If a party claims indigency and requests the appointment
of an attorney, the court shall require the person to file an affidavit of indigency and shall hear
evidence to determine the issue of indigency." Tex. Fam. Code Ann. § 263.405(e). On finding
indigency (or after indigency is deemed per the statute), the court "shall appoint counsel." Id.; see
also In re K.K., 180 S.W.3d 681, 684 (Tex. App.--Waco 2005, no pet.) (indigent parent right to
counsel includes right to appellate counsel); and In re K.D., No. 10-06-00350-CV, 2007 Tex. App.
LEXIS 7947 (Tex. App.--Waco Oct. 5, 2007, order) (finding that indigent parent's right to appointed
appellate counsel continues through appeal to Supreme Court). 

 This statutory right gives rise to constitutional considerations: due process in the
administration of the right (13) and the right to constitutionally effective counsel. See M.S., 115 S.W.3d
at 544 ("the statutory right to counsel in parental-rights termination cases embodies the right to
effective assistance of counsel"). Just as it "would seem a useless gesture" to require appointment
of trial counsel not required to perform effectively, see id., it would be useless to require
appointment of appellate counsel without requiring that counsel to be effective. See K.K., 180
S.W.3d at 684 ("the right to effective counsel extends to the appellate level"). 

 The trial court received what it acknowledged was a request for counsel and supporting
affidavit of poverty December 11, 2006. (14) The State has never challenged Chad's evidence (as
provided in his affidavit and letter) of indigency or entitlement, generally, to an attorney. The court
had a statutory duty, on receipt of Chad's letter, to "hear evidence to determine the issue of
indigency" and, on finding indigence, to appoint counsel. See Tex. Fam. Code Ann. § 263.405(e). 
Though subsection (e) allows up to thirty-six days after judgment before an attorney is deemed
appointed by default, the court is not required to wait thirty-six days before appointment of appellate
counsel. (15) The timetable in subsection (e) seems to presume the continuation of earlier appointed
trial-level  counsel  in  an  appellate  capacity  until  appointment  of  appellate  counsel  under
subsection (e). See In re H.R., 87 S.W.3d 691, 702-03 (Tex. App.--San Antonio 2002, no pet.). 
Chad had no trial counsel to protect his rights pending appointment of appellate counsel.

 A "trial is unfair if the accused is denied counsel at a critical stage of his trial." United States
v. Cronic, 466 U.S. 648, 659 (1984). We are unaware of cases that have analyzed, through a
constitutional prism, the effect of a delayed appointment of counsel in a parental rights termination
case. But see In re K.D., 202 S.W.3d 860, 866 (Tex. App.--Fort Worth 2006, no pet.) (not reaching
constitutional question, in posture of reviewing frivolousness finding, of delay in appointing trial
counsel because record did not indicate at what point after retained counsel's withdrawal the need
for appointed counsel was asserted before appointment); In re D.A.R., 201 S.W.3d 229 (Tex.
App.--Fort Worth 2006, no pet.) (delayed appointment of appellate counsel, but constitutional issue
not raised); K.K., 180 S.W.3d at 683 n.1 (noting that, with addition of subsection (i), "the importance
of having effective assistance of counsel in this critical stage of a termination case has only
heightened" during the post-trial motion period). But consistent with the requirement that counsel
in parental rights termination cases be constitutionally effective, it would seem a "useless gesture"
to require the appointment of constitutionally effective counsel but when properly requested not
require such counsel's appointment before the critical time at which a procedural bar is imposed.

 5. Eldridge Balance

 Having recognized that Chad's constitutionally protected parent-child relationship is at stake,
and in light of the precedent concerning a parent's entitlement to fundamentally fair procedure,
meaningful appeal, and effective assistance of counsel before his or her parental rights are
terminated, we now review subsection (i)'s procedural bar under a due-process analysis. The proper
test for analyzing the constitutionality of a procedure in the parental rights termination context is the
three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). See M.S.,
115 S.W.3d at 547; cf. J.F.C., 96 S.W.3d 256, 273 (Tex. 2002). "In conducting an Eldridge due
process analysis, we weigh three factors--the private interests at stake, the government's interest in
the proceeding, and the risk of erroneous deprivation of parental rights--and balance the net result
against the presumption that our procedural rule comports with constitutional due process
requirements." M.S., 115 S.W.3d at 547 (footnotes omitted).

 Both the parent's and the children's private interests are affected in a parental rights
termination case. Id. at 547-48. The fundamental liberty right of a parent to raise his or her child
"is undeniably 'an interest far more precious than any property right.'" J.F.C., 96 S.W.3d at 273
(quoting Santosky, 455 U.S. at 758-59). The parent's interest in ensuring "the accuracy and justice
of the decision to terminate his or her parental rights is, therefore, a commanding one." Lassiter, 452
U.S. at 27. The children share this interest in assuring an accurate and just decision. M.S., 115
S.W.3d at 547. The children's "best interest" is also at stake. Id. "Parents and children also have
an interest in resolving termination proceedings as expeditiously as reasonably possible." J.F.C.,
96 S.W.3d at 274. On the whole, the parent's and children's interest in ensuring the decision to
permanently extinguish the family bond is an accurate and just decision weighs heavily in favor of
permitting appellate review of that decision, despite the statutory bar, when counsel was unavailable
to assist in meeting the procedural prerequisites.

 The State's interest in applying subsection (i) includes protecting the best interest of the child,
an interest which is "served by procedures that promote an accurate determination of whether the
natural parents can and will provide a normal home." M.S., 115 S.W.3d at 548-49 (quoting
Santosky, 455 U.S. at 767); see also B.L.D., 113 S.W.3d at 353 (the State "parens patriae interest
in promoting the welfare of the child" aligns with the parent's interest in a just and accurate
decision). The State also has an interest in an accelerated timetable and a final decision that is not
"unduly prolonged" (16) with negative psychological effects on the children left in limbo. See M.S.,
115 S.W.3d at 548; B.L.D., 113 S.W.3d at 353. The State has a further "strong interest in ensuring
that our trial courts have an opportunity to correct errors as a matter of judicial economy." B.L.D.,
113 S.W.3d at 353. "But the State's interests in economy and efficiency pale in comparison to the
private interests at stake, and to the risk that a parent may be erroneously deprived of his or her
parental rights and the child may be erroneously deprived of the parent's companionship." M.S., 115
S.W.3d at 548. Moreover, the State's interests here in economy and efficiency are minimal: Chad
filed his statement of points one week late and in conjunction with a timely motion for new trial; the
court did have an opportunity to consider Chad's points of error at the hearing on the motion for new
trial and for frivolousness.

 Finally, the State has an interest in "maintaining procedural integrity," with the uniform and
consistent application of procedural rules and law. See id. at 548-49. The State's interest in the
procedural integrity of subsection (i) is not compelling in this case in light of the glaring procedural
irregularity--delayed appointment of counsel during the critical period--necessitating the analysis. 
Cf. id. at 549 ("It is one thing, however, to have those procedures in place; it is quite another when
counsel unjustifiably fails to follow those procedures."). On the whole, because the State's interest
in protecting the child weighs in favor of appellate review, the State's interests in economy and
efficiency pale in comparison to the parent's and children's interest in review, and the State's interest
in consistent procedure is minimal under the facts presented, this factor also weighs in favor of
allowing appellate review.

 "The parent's, child's, and government's interest in a just and accurate decision dovetails with
the third Eldridge factor--that of the risk of erroneous deprivation" of the parent-child relationship. 
Id. The "pivotal" fact in the analysis is that termination is "traumatic, permanent, and irrevocable." 
Id. Thus, "any significant risk of erroneous deprivation is unacceptable." Id. The Texas Family
Code provides a detailed and comprehensive scheme for minimizing the risk of erroneous
deprivation while protecting the child's best interest. See B.L.D., 113 S.W.3d at 354-55. However,
in this case, the application of that statutory scheme resulted in the appointment of counsel only after
the deadline for filing the statement of points had lapsed. The risk of the erroneous deprivation of
fundamental liberty rights by disallowing appellate review of any errors--including the sufficiency
of the evidence--when an indigent parent, who timely and properly requests the statutory right to
counsel, but for whom counsel is not appointed until after the deadline for filing the statement of
points is, like the risk the court acknowledged in M.S., "too high." See M.S., 115 S.W.3d at 549. 

 The calibration of the Eldridge factors in this case overcomes the presumption that
subsection (i) constitutionally prohibits appellate review. While facilitating speedy finality for
children and the opportunity for trial courts to correct mistakes are proper goals, the Legislature has
authorized a procedure, in barring untimely statements to the trial court of issues intended to be
raised on appeal, that, in the particular facts of this case, has had a profoundly discriminatory effect. 
We find that barring appellate review, under subsection (i), of Chad's issues on appeal has the result
of denying Chad the "fundamental fairness" to which he is entitled in parental rights termination
proceedings and appeals. Subsection (i), as applied, has the effect of rendering Chad's right to
effective counsel a "useless gesture" and renders counsel's efforts at appeal a "meaningless ritual." 
We therefore hold subsection (i) unconstitutional as applied to an indigent parent not provided timely
requested appointed counsel during the critical period before the deadline established in subsection
(b).

 D. Remedy

 Having found subsection (i) unconstitutional as applied, we deem Chad's late-filed statement
of points timely filed under subsection (b). See J.C., 108 S.W.3d at 916-17 (deeming procedural
deadline compliance timely because compliance with a procedural deadline of constitutional
dimension was made impossible by the court's failure to timely appoint counsel). We thus proceed
with our review of Chad's points of error as raised in his statement of points.

IV. Default Judgment

 Chad's first point of error actually raises multiple grounds of error. A point of error
addressing more than one specific ground of error is multifarious. Bell v. Tex. Dep't of Crim.
Justice-Inst. Div., 962 S.W.2d 156, 157 n.1 (Tex. App.--Houston [14th Dist.] 1998, pet. denied);
City of San Antonio v. Rodriguez, 856 S.W.2d 552, 555 n.2 (Tex. App.--San Antonio 1993, writ
denied). If a court concludes that a point of error is multifarious, it may refuse to review it, or it may
consider the point of error if it can determine with reasonable certainty the error about which the
complaint is made. Bell, 962 S.W.2d at 157 n.1. To the extent Chad's multifarious grounds of error
are reasonably discernible, we address them below.

 A. Post-Answer Default

 The trial court found Chad had "wholly made default." The Texas Rules of Civil Procedure
provide that "at any time after a defendant is required to answer, the plaintiff may . . . take judgment
by default against such defendant if he has not previously filed an answer . . . ." Tex. R. Civ. P. 239. 
Nonetheless, at "any time before a judgment by default has been actually announced by the court,
a defendant has the right to file his answer." City of Jefferson v. Jones, 74 Tex. 635, 12 S.W. 749
(1889). Thus, a no-answer default may not be taken even if the defendant files his or her answer at
the hearing to grant default. Id. (answer filed after hearing but before default rendered); see also
World Co. v. Dow, 116 Tex. 146, 287 S.W. 241, 243 (1926) (answer filed day of hearing); Dowell
Schlumberger, Inc. v. Jackson, 730 S.W.2d 818, 819 (Tex. App.--El Paso 1987, writ ref'd n.r.e.)
(answer filed during hearing, before default found). 

 Chad's answer was due in March 2006, and default judgment was entered December 11,
2006. Chad never formally answered until after counsel was appointed (counsel filed a post-judgment "amended" answer in January 2007). Nonetheless, Chad contends the court erred because
he did answer before entry of default.

 1. October 8 Letter

 Chad asserts his October 8 letter to the district attorney was a pro se answer under Texas
Rules of Civil Procedure 83, 84, and 85, since it identified the cause and style of the suit, expressed
a desire for contact with the children, and expressed a desire for future involvement in their lives. 
See In re K.B.A., 145 S.W.3d 685, 690-91 (Tex. App.--Fort Worth 2004, no pet.); Thomas v.
Collins, 860 S.W.2d 500 (Tex. App.--Houston [1st Dist.] 1993, writ denied). Unlike the pro se
letter-answers in those cases, Chad did not send his October 8 letter to, or file it with, the court. 

 Chad cites Lyons v. Paul, 321 S.W.2d 944 (Tex. Civ. App.--Waco 1959, writ ref'd n.r.e.),
for the proposition that a letter sent to opposing counsel may serve as an "answer." But this case is
distinguishable from Lyons on several grounds, most importantly that the citation in Lyons did not
state where an answer must be filed, while Chad's citation did. Chad has failed to show that sending
his October 8 letter to the district attorney, in lieu of to the court's address as indicated on the
citation, was the equivalent of filing an answer with the court. See also Simmons v. McKinney, 225
S.W.3d 706, 708-09 (Tex. App.--Amarillo 2007, no pet.) (refusing, under "constructive notice"
approach, to allow "answer" faxed to opposing counsel but not filed with court to defeat default).

 However, though not brought to the court by Chad, the October 8 letter was technically
admitted  into  evidence,  by  the  State,  just  moments  before  the  entry  of  the  default  judgment. 
Rule 21 defines the procedure for filing a document: "Every pleading, plea, motion or application
. . . unless presented during a hearing or trial, shall be filed with the clerk of the court . . . ." Tex.
R. Civ. P. 21 (emphasis added). Although Chad's October 8 letter was "presented" to the court by
the district attorney during a hearing or trial, we find that, under these facts, Rule 21 must be read
in conjunction with Rule 239. See Tex. R. Civ. P. 239. Rule 239 allows that "at any time after a
defendant is required to answer, the plaintiff may . . . take judgment by default against such
defendant if he has not previously filed an answer . . . ." Tex. R. Civ. P. 239 (emphasis added). 
Thus, Rule 239 requires a defendant's active role in deciding to answer a suit. One consequence of
filing an answer is that the defendant submits to the jurisdiction of the court. See Simmons, 225
S.W.3d 706 (citing Forty-Acre Spring Livestock Co. v. W. Tex. Bank & Trust Co., 111 S.W. 417, 419
(Tex. Civ. App. 1908)). A letter written to opposing counsel, not the court, cannot be construed as
a defendant's answer thereby submitting to the court's jurisdiction. Since Chad never attempted to
present the October 8 letter to the court, it is not a pre-default answer.


 2. December 1 Letter

 Chad alternatively contends that the December 1 letter was a pre-default answer. Chad
asserts that, although received after entry of judgment on December 11, (17) the letter should be deemed
filed as of the date of its mailing (December 1) under the mailbox rule. See Tex. R. Civ. P. 5. The
mailbox rule provides that:

 If any document is sent to the proper clerk by first-class United States mail . . . and
is deposited in the mail on or before the last day for filing same, the same, if received
by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed
filed in time.


Tex. R. Civ. P. 5 (emphasis added). The record shows that the envelope containing Chad's
December 1 letter is postmarked United States mail December 1 and was received on the day of, but
after, judgment. If the mailbox rule applies, this would be deemed a timely answer. 

 Though we have not interpreted Rule 5 as applied to answers, this Court has previously found
that "Rule 5's 'mailbox rule' does not apply where there is no preset deadline for filing a document." 
Alvarez v. Thomas, 172 S.W.3d 298, 301 (Tex. App.--Texarkana 2005, no pet.); see also In re
Hearn, 137 S.W.3d 681, 685 n.5 (Tex. App.--San Antonio 2004, no pet.) ("Rule 5 does not deem
a motion filed . . . when no filing deadline is involved"); Smith v. Tex. Dep't of Criminal Justice-Inst.
Div., 33 S.W.3d 338, 341 (Tex. App.--Texarkana 2000, pet. denied) (mailbox rule would not
operate to enlarge the time in absence of deadline for filing). This is because the "plain wording of
the rule makes it applicable to filings for which there is a time limitation or a deadline." Alvarez,
172 S.W.3d at 301.

 Although there is a "deadline" for filing an answer, which is, technically, the Monday next
after twenty days after the date of service, see Tex. R. Civ. P. 99(b), an answer may also be filed at
any time before default. See Tex. R. Civ. P. 239; Jones, 12 S.W. 749. The relevant question, then,
is whether Rule 5 applies to the second indeterminate "deadline" of the time period after the Monday
next after twenty days after the date of service but before default. Consistent with our prior opinions
in Alvarez and Smith, we find that this indeterminate deadline is not a filing deadline under Rule 5. 
But see Thomas v. Gelber, 905 S.W.2d 786, 789 (Tex. App.--Houston [14th Dist.] 1995, no writ)
(holding that the "last day for filing" an answer is the time of default). That is, for purposes of the
application of the mailbox rule, the last day for filing an answer is the Monday next after twenty days
after the date of service. (18) Although an answer could still be filed at any point after that date but
before entry of default, the mailbox rule will no longer apply to extend the filing date, or allow for
a deemed filing date. Thus, Chad's December 1 letter was appropriately not deemed filed on
December 1; with its filing after entry of judgment, the December 1 letter is not a pre-default answer.

 B. Pre-Default Continuance

 Having decided that neither the October 8 nor the December 1 letter was a pre-default
answer, we need not reach Chad's contention that he was entitled, on the basis of one or both of these
"answers," to his requested continuance. See Tex. R. Civ. P. 251 ("No application for a continuance
shall be heard before the defendant files his defense, nor shall any continuance be granted except for
sufficient cause supported by affidavit . . . ."); see also In re H.R., 87 S.W.3d 691, 701 (Tex.
App.--San Antonio 2002, no pet.) (not abuse of discretion to deny parent's last-minute motion for
continuance unsupported by affidavits or documentation and not explaining months of inactivity and
noncompliance).

 C. Pre-Default Attorney

 The statute requires the trial court to appoint counsel for "an indigent parent . . . who
responds in opposition to the termination" requested in a suit by a governmental entity. Tex. Fam.
Code Ann. § 107.013(a)(1) (emphasis added). Chad does not explicitly address the statutory
requirements, but asserts that the trial court should have appointed counsel pre-default. Presuming,
without deciding, that Chad's request for a postponement or continuance constitutes "responds in
opposition," Chad still fails to show whether and how he asserted indigence before default. Though
Chad correctly notes that the court knew that Chad was incarcerated, Chad fails to show how the fact
of incarceration, alone, must be equated with indigence.

 D. Post-Default Attorney As of December 11, 2006

 Chad also asserts, in point of error one, that the trial court committed reversible error in not
appointing counsel at the "critical point" of December 11, 2006. To the extent Chad asserts the right
pre-default, it is addressed above. To the extent Chad asserts the right post-default, we note that
Chad does not attempt to show harm from the judge's delay in appointing the attorney, other than in
the discussion of the constitutional implications discussed and addressed above. (19) See Tex. R. App.
P. 44.1; Lone Star Steel v. Scott, 759 S.W.2d 144, 147 (Tex. App.--Texarkana 1988, writ denied)
(harmless-error analysis applies to all errors, even those involving the violation of procedural rules
couched in mandatory language). 

 E. Access to Courts

 Chad further asserts, in point of error one, that the default judgment represents a violation
of his due-process rights, as an inmate, to access the courts. "[L]itigants cannot be denied access to
the courts simply because they are inmates." In re Z.L.T., 124 S.W.3d 163, 165 (Tex. 2003). Chad
asserts that the court erred in not allowing Chad to appear in person or, alternatively, through an
attorney. The cases he cites, however, are distinguishable, since Chad never requested, pre-default,
either a bench warrant or an attorney. A trial court has no duty to sua sponte bench warrant an
incarcerated parent to court. Id. at 166. The incarcerated parent bears the "burden to establish his
right to relief" to the trial court. Id. Since Chad did not request access to the courts before his
default, he may not now defeat the default merely by the fact of his incarceration.

 In sum, point of error one--in all its parts--is overruled.

V. Motion for New Trial Under Craddock

 Alternatively, Chad asserts, in point of error two, that he was entitled to a new trial post-default under Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). The
appropriate inquiry on review when a default judgment is attacked by motion for new trial is on
"what has always been and always should be the critical question in any default judgment: 'Why did
the defendant not appear?'" Fid. & Guar. Ins. Co. v. Drewery Constr. Co., 186 S.W.3d 571, 574
(Tex. 2006). If "the answer to the critical question is 'I got the suit papers but then . . .' the default
judgment should be set aside only if the defendant proves the three familiar Craddock elements." 
Id. (citing Craddock, 133 S.W.2d at 126). If the Craddock standard has been met, we reverse the
refusal to grant a new trial as an abuse of discretion. See Old Republic Ins. Co. v. Scott, 873 S.W.2d
381, 382 (Tex. 1994).

 "A trial court should set aside a default judgment and grant a new trial if the defendant
shows: (1) the failure to appear was not intentional or the result of conscious indifference, but was
due to accident or mistake; (2) the defendant has a meritorious defense; and (3) granting the motion
will not cause delay or injure the plaintiff." In re J.P., 196 S.W.3d 434, 438-39 (Tex. App.--Dallas
2006, no pet.) (citing Craddock, 133 S.W.2d at 126). "In applying the Craddock factors, the trial
court considers 'the knowledge and acts of the defendant' as reflected in the record." Id. (citing Holt
Atherton Indus. v. Heine, 835 S.W.2d 80, 82 (Tex. 1992)). While courts are relatively lenient on the
first prong, (20) a defendant must not have known of the action and just ignored it. See R.R., 209
S.W.3d at 115. 

 Chad asserts that the combination of his incarceration (with attendant inability to appear),
indigence, and lack of counsel is sufficient to show that his failure was not intentional or a result of
his conscious indifference. Chad points to his letters as proof of his attempts to respond to the suit
as he knew best. Chad argues that the December 1 letter is sworn and provides a plausible reason
for his failure to answer: he understood the goal to be reunification with the mother and supported
that goal while he was unavailable in prison. (21) Indeed, Chad's letters to the district attorney and to
the court seemed to start after the goal changed from reunification to termination. 

 But we are not persuaded that Chad's letters suffice. Chad provides no reason why he
initially sent letters to the district attorney but not the court. Chad's stated excuse for his failure to
file documents with the court--that he did not oppose the action initially--reflects intentional failure
to answer or a conscious indifference, not a mistake or accident. The fact that Chad apparently later
changed his mind is not persuasive. The "filing of a late answer, regardless of how soon after the
deadline it is filed, does not, by itself, negate conscious indifference to filing a timely answer." 
Lemons v. Thomas, No. 05-00-01247-CV, 2001 WL 710330, at *1 (Tex. App.--Dallas June 26,
2001, no pet.) (not designated for publication). 

 Because Chad does not show that his failure to appear was not intentional or the result of
conscious indifference, he does not meet the first Craddock prong. We need not address the
remaining prongs. We overrule the point of error.




VI. Legal and Factual Sufficiency

 A. Preservation of Error

 In his fifth point of error, Chad asserts that legally and factually insufficient evidence
supports each of the grounds for termination and the finding that termination was in the children's
best interests. The State, as a preliminary matter, asserts that Chad's claims of insufficient evidence
are not "sufficiently specific" to allow review under subsection (i). 

 Subsection (i) states that "a claim that a judicial decision is contrary to the evidence or that
the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for
review." Tex. Fam. Code Ann. § 263.405(i). "The plain language of the statute indicates the
Legislature intended to bar our consideration of global, nonspecific claims of evidentiary
insufficiency  in  a  Statement  of  Points."  In  re  N.L.G.,  No.  06-06-00066-CV,  2006 WL
3626956, at *3 (Tex. App.--Texarkana Dec. 14, 2006, pet. denied) (mem. op.). But a statement of
points' specific, nonglobal claims of insufficiency are not precluded from review. See In re A.J.H.,
205 S.W.3d 79, 80-81 (Tex. App.--Fort Worth 2006, no pet.) (finding statement of points
sufficiently specific when evidentiary sufficiency point references specific paragraphs of judgment
and specific grounds of termination); S.B., 207 S.W.3d at 882 (finding sufficiency points of error
"specific enough"). But cf. C.M., 208 S.W.3d at 92 n.3 (statement of desire to appeal "from all
portions of the judgment" not sufficiently specific to preserve seven issues on appeal); A.C.A., 2006
WL 1172331, at *1 (a statement that "evidence was factually and legally insufficient to support the
judgment" in motion for new trial "is insufficient to preserve the issue for appeal"); A.H.L., 214
S.W.3d at 54 (same). 

 As the Fort Worth court has noted in assessing the sufficiency of the sufficiency point of
error, we are constrained to construe termination statutes strictly in favor of the parent and "we are
prohibited from construing the statute in a way that liberally expands its reach and consequently
favors the State." S.B., 207 S.W.3d at 882. Construing the statute in the parent's favor, and after
considering similar cases, we find that Chad's separate complaints as to each of the separate grounds
of termination and the best interest finding, as stated in his statement of points, are sufficiently
specific to satisfy the requirements of subsection (i).

 B. Standards of Review

 The burden of proof for termination of parental rights is clear and convincing evidence. Tex.
Fam. Code Ann. § 161.001 (Vernon Supp. 2006); J.F.C., 96 S.W.3d at 263. The evidence is clear
and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief
or conviction of the truth of the allegations sought to be established by the State. In re C.H., 89
S.W.3d 17, 25-26 (Tex. 2002); B.S.W., 87 S.W.3d at 769. 

 In reviewing the legal sufficiency of the evidence, we view all the evidence in a light most
favorable to the finding to determine whether a reasonable trier of fact could have formed a firm
belief or conviction that its finding was true. Tex. Fam. Code Ann. § 101.007 (Vernon 2002);
J.F.C., 96 S.W.3d at 266; C.H., 89 S.W.3d at 25. Looking at the evidence in the light most favorable
to the judgment means that we must assume that the fact-finder resolved disputed facts in favor of
its finding if a reasonable fact-finder could do so. A corollary to this requirement is that a court
should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have
been incredible. J.F.C., 96 S.W.3d at 266.

 When reviewing a factual sufficiency challenge to a parental rights termination, we consider
the evidence the fact-finder could reasonably have found to be clear and convincing. See id.; see
also C.H., 89 S.W.3d at 25-26. In applying this standard to a trial court's findings, we ask whether
there was sufficient evidence presented to produce in the mind of a rational fact-finder a firm belief
or conviction as to the truth of the allegations sought to be established. In re N.R., 101 S.W.3d 771,
774 (Tex. App.--Texarkana 2003, no pet.). 

 C. Discussion

 The State has the burden of proving, by clear and convincing evidence, both statutory
ground(s) for termination, see Tex. Fam. Code Ann. § 161.001(1), and that termination is in the best
interests of the children. See Tex. Fam. Code Ann. § 161.001(2). On review, if we find that one
of the alleged predicate grounds for termination under Section 161.001(1) is supported by sufficient
evidence, it is not necessary to review the remaining predicate grounds. See In re A.V., 113 S.W.3d
355, 362 (Tex. 2003); Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990).

 As previously noted, the "natural right existing between parents and their children is of
constitutional dimensions." Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Thus, we strictly
scrutinize parental rights termination proceedings; when construing the predicate grounds for
termination of parental rights, "involuntary termination statutes are strictly construed in favor of the
parent." Id.

 1. Predicate Grounds

 The State alleged, and the court found, termination appropriate under three grounds: 
endangering conditions, (22) endangering conduct, (23) and constructive abandonment. (24) 

 While "endanger" means "more than a threat of metaphysical injury or the possible ill effects
of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child
or that the child actually suffers injury. Rather, 'endanger' means to expose to loss or injury; to
jeopardize." Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987) (citations
omitted).

 Conduct that "subjects a child to a life of uncertainty and instability endangers the physical
and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent
may establish an endangering course of conduct." A.J.H., 205 S.W.3d at 81 (quoting In re R.W., 129
S.W.3d 732, 739 (Tex. App.--Fort Worth 2004, pet. denied)). Continued narcotic use after the
children's removal is conduct that jeopardizes parental rights and may be considered as establishing
an endangering course of conduct. See Cervantes-Peterson v. Tex. Dep't of Family & Protective
Servs., 221 S.W.3d 244, 253-54 (Tex. App.--Houston [1st Dist.] 2006, no pet.). Nonetheless, the
evidence of endangerment must be "the direct result of the parent's conduct." In re D.T., 34 S.W.3d
625, 634 (Tex. App.--Fort Worth 2000, pet. denied). The fact of "imprisonment will not, standing
alone, constitute engaging in conduct which endangers the emotional or physical well-being of a
child." Boyd, 727 S.W.2d at 533 (but noting that "imprisonment is certainly a factor to be considered
by the trial court on the issue of endangerment"). 

 The evidence shows that Chad, who had notice of the ongoing parental rights termination
proceeding, used drugs during the pendency of that proceeding. The Mississippi court documents
dated August 15, 2006, show that Chad, in violation of the terms of his "post-release supervision"
on the possession of precursors with intent to manufacture methamphetamine conviction, "admitted
that he did a line of powder 3 nights ago." Chad engaged in this conduct in violation of the terms
of his "post-release supervision" and knowing of the risk of re-incarceration. A parent's "propensity
toward anti-social behavior, as demonstrated by his criminal convictions and his behavior while in
prison, is evidence that he may be an emotional or physical danger" to the child now or in the future. 
B.S.W., 87 S.W.3d at 773. Not only did Chad again exhibit anti-social behavior, Chad engaged in
this conduct despite his notice of the State's allegations of Ashley's neglect and the risk to his own
parental rights. See A.J.H., 205 S.W.3d at 81; see also In re S.T., 127 S.W.3d 371, 378-79 (Tex.
App.--Beaumont 2004, no pet.) (father's continued drinking, and charges of driving while
intoxicated, though aware of neglectful spouse's risk to children, sufficient proof of endangering
conduct). 

 We view Chad's conduct in conjunction with other evidence supporting a course of
endangering conduct: several State employee witnesses testified that Ashley told them Chad battered
her, and one--Child Protective Services (CPS) employee Nikki Payne--testified Ashley told her
Chad had beaten her in the children's presence; Payne testified she "believes" the State of Mississippi
was involved in trying to get Ashley to a battered women's shelter away from Chad. CPS employee
Tina Freeman, who admitted to never having contact with Chad, testified that, based on what she
learned from unidentified sources, Chad "has a history of domestic violence. He has a history of
drug usage. He has not supported the children financially." Payne testified Ashley told her she got
drugs from Chad in the year 2000. Several of the State's witnesses testified Ashley reported that
Chad had stalked her, pursued her, and forced her off the road during a visit to Texas in June 2006;
Tammy Stidham, a CPS supervisor, testified to Chad being "irate" and throwing toys around the CPS
office to the point that CPS employees had to call the police, when Chad's one known attempt to visit
the children during the pendency of the case was thwarted in that same June 2006 visit to Texas. (25) 
The State also introduced evidence of Chad's anti-social behavior in the form of criminal convictions
for burglary in Gregg County in the 1990s, including revocation of community supervision. The
record contains no evidence contrary to that presented by the State. (26) 

 A reasonable and rational fact-finder could have formed a firm belief or conviction that Chad
engaged in conduct which exposed his children to loss or injury and jeopardized the children's
emotional and physical well-being because of Chad's continued drug use, subsequent incarceration,
and anti-social conduct generally, at the CPS office in June 2006, and over the years toward
Ashley--his then-wife and the children's mother. The evidence is legally and factually sufficient to
support the predicate finding of conduct endangerment. Having found legally and factually sufficient
evidence of Chad's conduct endangering the children, we need not assess the sufficiency of the
evidence on the other predicate grounds for termination.

 2. Best Interests of the Children

 Chad also asserts that the evidence is legally insufficient as to a finding that termination is
in the "best interest of the child" since such finding was not included in the court's filed findings of
fact and conclusions of law. Though the court had found termination of Chad's rights to be in the
children's best interests at the bench trial, in the findings of fact and conclusions of law, the court
omitted a finding that termination of the parent-child relationship was in the children's best interests. 
Instead, the court found only that appointment of the State as managing conservator was in the
children's best interests, a finding that is not necessarily inconsistent with the continuation of Chad's
parental rights. See, e.g., Tex. Fam. Code Ann. § 263.404 (Vernon 2002). 

 The Rules provide:


 When findings of fact are filed by the trial court they shall form the basis of the
judgment upon all grounds of recovery . . . embraced therein. The judgment may not
be supported on appeal by a presumed finding upon any ground of recovery . . . no
element of which has been included in the findings of fact; but when one or more
elements thereof have been found by the trial court, omitted unrequested elements,
when supported by evidence, will be supplied by presumption in support of the
judgment.


Tex. R. Civ. P. 299. "Best interest of the child" is not a separate "ground of recovery" but is a
statutorily prescribed "element" for parental rights termination. See J.F.C., 96 S.W.3d at 262. Thus,
under Rule 299, we must presume, in support of the judgment, the court's omitted finding on this
element in the filed findings of fact and conclusions of law.

 We review findings of fact entered in a case tried to the court, including presumed findings
on omitted elements, for legal and factual sufficiency of the evidence. See J.F.C., 96 S.W.3d at 276;
Lindner v. Hill, 691 S.W.2d 590, 592 (Tex. 1985); see also Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996). There is a "strong presumption that the best interest of the child is served by keeping
custody in the natural parent." H.R., 87 S.W.3d at 700. The best interest of the child is determined
by reference to an extended number of factors, including, but not limited to:

 (A) the desires of the child; (B) the emotional and physical needs of the child now
and in the future; (C) the emotional and physical danger to the child now and in the
future; (D) the parental abilities of the individuals seeking custody; (E) the programs
available to assist these individuals to promote the best interest of the child; (F) the
plans for the child by these individuals or by the agency seeking custody; (G) the
stability of the home or proposed placement; (H) the acts or omissions of the parent
which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.


Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976) (footnotes omitted). Additionally, the Texas
Supreme Court has cited Section 263.307 of the Texas Family Code for other factors to consider in
determining the best interests of the children and the willingness of a child's family to effect positive
changes. See R.R., 209 S.W.3d at 116; see also Tex. Fam. Code Ann. § 263.307 (Vernon 2002). 
Some of the Holley factors overlap with the statutory considerations. Additionally, some of the
Holley factors overlap with evidence supporting the predicate grounds for termination. See In re
C.E.K., 214 S.W.3d 492, 503 (Tex. App.--Dallas 2006, no pet.). 

 One of the statutory factors to consider is whether there is a history of abusive or assaultive
conduct by the child's family. See Tex. Fam. Code Ann. § 263.307(7). While the record primarily
consists of evidence of Ashley's conduct, since she had possession of the children in Gregg County,
there is also evidence of Chad's acts of domestic violence, as previously noted. During the marriage
of Chad and Ashley, Chad physically abused Ashley. Payne said that police reports from Mississippi
showed a lot of domestic violence involved with the family. At one time, the Human Services
Department in Mississippi was involved with "CPS-type" services. Ashley was urged to go to a
women's shelter after being battered by Chad. Further, during the month of June 2006, Chad came
to Longview, stalked Ashley around Longview, and tried to force the automobile she was driving
off the road. Ashley called the sheriff's department because she was fearful of him and thought he
was under the influence of drugs. Ashley further told the CPS worker that she was fearful because
of his history of "beating on her." The evidence shows Chad had "punched her in the face, . . .
kicked her, pulled her by the hair." 

 Another factor to consider is whether there is a history of substance abuse by the child's
family. See Tex. Fam. Code Ann. § 263.307(8). The record demonstrates a history of Chad's
involvement with illegal substances. Chad was convicted in October 2004 in Mississippi for
possession of precursor chemicals with intent to manufacture a controlled substance and was
assessed a five-year sentence (including post-release supervision). After his release to community
supervision, his release was revoked and he was incarcerated when it was determined that he had
tested positive for cocaine and methamphetamine. Additionally, there was testimony that Ashley
used drugs during her first pregnancy and that Chad supplied her with those drugs. 

 The children all have serious emotional and physical needs and vulnerabilities, considerations
under both the Holley and statutory factors. See Holley, 544 S.W.2d at 371-72 (factors B, C, D). 
All three children had severe dental problems, a physical need addressed shortly after the State
assumed custody of the children. All three children have behavioral problems; the young twins,
according to East Texas Court Appointed Special Advocate (CASA) representative Sandra Sadler,
are "wild," hyper, and overstimulated as a result of what she surmised was a chaotic environment
with drug exposure. Freeman testified that the twins likely had "drug exposure in vitro." The
evidence indicates that the behavioral problems (cursing, hitting other children, and screaming) are
ongoing, and the children are in counseling. One of the children is taking medication for Attention
Deficit Hyperactivity Disorder (ADHD) and another for agitation. Sadler opined that the children
require boundaries, limits, and parenting that their parents could not provide. 

 While it is true that Chad has been incarcerated during a portion of the children's lives, the
evidence does not show that either parent has demonstrated parenting skills for the minimal needs
of the children. See Tex. Fam. Code Ann. § 263.307(12) (best interest factors include provision of
minimal needs of health care, a safe home environment, protection from repeated exposure to
violence); see also Holley, 544 S.W.2d at 371-72 (factors D, G). The evidence reveals that the
health needs of the children were neglected; the home life established by Ashley and Chad, when
they were together, included several episodes of violence requiring State intervention; court records
establish Chad used cocaine and methamphetamine and supplied drugs to Ashley even during her
pregnancy. Payne testified the chaotic home life illustrates that the parents are unable to provide for
the needs of the children. 

 Further, the testimony showed that Chad did not have a support system for the children 
through an extended family. See Tex. Fam. Code Ann. § 263.307(13). Payne testified the State
could not place the children with relatives. Payne stated that only Ashley's great-grandmother had
come forward as a possible placement--and for only one of the children--but the great-grandmother
"was fearful of Chad as well, because of his violent temper, and she didn't want any problems with
him." 

 The trial court is also allowed to consider the acts or omissions of the parent, and any excuse
for the parent's actions, in determining if the parent-child relationship is a proper one. We have
already discussed the violence in the home and the conviction for possession of illegal substances. 
Additionally, Chad was convicted, in Gregg County in 1993, and placed on community supervision
for burglary of a habitation. A few months later, his community supervision was revoked for
committing another offense in Gregg County--burglary of a vehicle. Chad was sentenced to eight
years' confinement on the revocation. At the same time, he was sentenced for the burglary of a
vehicle offense. According to the record, Chad also was convicted in Rusk County of another
burglary of a motor vehicle offense in 1994. While criminal convictions alone do not necessarily
lead to the conclusion that termination of parental rights is in the child's best interest, a pattern of
criminal actions leading to incarceration is certainly a factor to consider. In re S.M.L., 171 S.W.3d
472 (Tex. App.--Houston [14th Dist.] 2005, no pet.). The evidence does not suggest any excuse for
such acts or omissions. 

 The record is silent as to several of the considerations (the desires of the children, programs
to assist the parent, the parent's willingness to effect environmental change). See Tex. Fam. Code
Ann. § 263.307(10), (11); Holley, 544 S.W.2d at 371-72 (factors A, E). The record does show that
Chad failed to comply with court-ordered support in both this case and in a prior case concerning
only S.K.A. The record thus speaks to Chad's unwillingness to cooperate and effect positive
personal changes. See Tex. Fam. Code Ann. § 263.307 (10), (11). As far as the future plans for the
children are concerned, the record shows that CPS will seek to place the twins for adoption and the
oldest child with the maternal grandmother. 

 When considering all of the factors for which there is evidence in the record, we conclude
that the evidence is legally and factually sufficient to support the trial court's determination that
termination of Chad's parental rights is in the best interests of the children. 

VII. Conclusion

 We find subsection (i)'s procedural bar to review unconstitutional as applied to an indigent
parent, who after proper request, was not provided appointed counsel during the critical period
before the deadline established in subsection (b). Therefore, we have addressed issues raised in the
points of appeal filed immediately after counsel was appointed. On reaching the issues raised on
appeal as presented in the statement of points, we overrule each of the points of error. 





 Accordingly, we affirm the judgment. 


 Jack Carter

 Justice


Date Submitted: June 21, 2007 

Date Decided: October 17, 2007

1. To protect the parents' and children's privacy, we refer to the parents by their first names and
the children by their initials. See Tex. Fam. Code Ann. § 109.002(d) (Vernon 2002).
2. Ashley divorced Chad August 16, 2006, during the course of this proceeding.
3. The record indicates Chad was convicted in Mississippi of possession of methamphetamine
precursors with the intent to manufacture a controlled substance in October 2004. Chad was
sentenced to five years "in the custody of the Mississippi State Department of Corrections," the last
two years under "post-release supervision." The record does not indicate Chad's particular status in
September 2005.
4. The record contains conflicting information on Chad's status as of February 2006. The
State's February 9, 2006, petition indicated Chad "was recently released from prison." The court
found, on February 17, 2006, that Chad "is currently an inmate of the Mississippi Department of
Corrections - Lamar Earned Release Supervision Unit." At a later hearing, a State caseworker
testified that Chad "was released during the pendency of this case," but later stated that, at the time
of the petition, Chad was "confined to his home or the county." Chad remained under "post-release
supervision," whatever its parameters, until Mississippi's revocation and re-incarceration of him in
July 2006. 
5. The order appointing counsel was signed January 2 and filed January 3, 2007. Counsel was
notified of the appointment the afternoon of January 3. 
6. See Tex. Fam. Code Ann. § 263.405(d) (subsection (d)).
7. See, e.g., In re R.B., 225 S.W.3d 798, 802 (Tex. App.--Fort Worth 2007, no pet.); In re
R.C., No. 07-06-00444-CV, 2007 WL 1219046, at *1 (Tex. App.--Amarillo Apr. 25, 2007, no pet.);
In re J.W.H., 222 S.W.3d 661 (Tex. App.--Waco 2007, no pet.); Coey v. Tex. Dep't of Family &
Protective Servs., No. 03-05-00679-CV, 2006 WL 1358490 (Tex. App.--Austin May 19, 2006, no
pet.);  In  re  S.E.,  203  S.W.3d  14,  15  (Tex.  App.--San  Antonio  2006,  no  pet.);  In  re  A.C.A.,
No. 13-05-00610-CV, 2006 WL 1172331 (Tex. App.--Corpus Christi May 4, 2006, no pet.). 
8. See,  e.g.,  In  re  M.N.,  No.  11-06-00228-CV,  2007  WL  1366793  (Tex.  App.--Eastland
 May 10, 2007, no pet.); Pool v. Tex. Dep't of Family & Protective Servs., 227 S.W.3d 212, 215
(Tex. App.--Houston [1st Dist.] 2007, no pet.); In re M.D.L.E., No. 09-05-00514-CV, 2007 WL
685562 (Tex. App.--Beaumont Mar. 8, 2007, no pet.); In re J.H., No. 12-06-00002-CV, 2007 WL
172105 (Tex. App.--Tyler Jan. 24, 2007, no pet.); In re A.H.L., 214 S.W.3d 45, 53-54 (Tex.
App.--El Paso 2006, pet. denied); In re C.M., 208 S.W.3d 89, 92 (Tex. App.--Houston [14th Dist.]
2006, no pet.); see also In re M.D., No. 05-06-00779-CV, 2007 WL 1310966 (Tex. App.--Dallas
May 7, 2007, no pet.) (retaining jurisdiction to modify judgment).
9. Accord Sax v. Votteler, 648 S.W.2d 661, 664 (Tex. 1983); cf. In re K.A.F., 160 S.W.3d 923,
928 (Tex. 2005) (constitutional complaints relating to parental rights termination appeal "could not
have been asserted in the trial court" but parent is "required to raise them in the court of appeals in
order to preserve error"); In re B.S., No. 09-06-00293-CV, 2007 WL 1441273, at *5 (Tex.
App.--Beaumont May 17, 2007, no pet.) (finding constitutional challenge to subsection (i) waived
since not raised in statement of points or motion for new trial); In re S.B., 207 S.W.3d 877, 881-82
(Tex. App.--Fort Worth 2006, no pet.) (implying ineffective assistance claim could have been raised
in motion for new trial). But cf. R.C., 2007 WL 1219046, at *1-2 (finding late motion for new trial
and statement of points inadequate to raise ineffective assistance of counsel claim).

 We note that the statement of points requirement may not independently serve to preclude
an otherwise-preserved constitutional attack on the statute. See Tex. Const. art. I, § 29 (the Bill of
Rights "shall remain inviolate, and all laws contrary thereto, or to the following provisions, shall be
void"); Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025, 1028-29 (1934) (judiciary has power to
declare void a legislative act restricting judicial enforcement of rights, the effect of which is to
violate a constitutional right). 
10. Many of our sister courts of appeals, on similar construction of the statute, have questioned
the practical effects and constitutional validity of the statement of points requirement in certain
circumstances. See, e.g., In re R.M., No. 04-07-00048-CV, 2007 WL 1988149, at *1 (Tex.
App.--San Antonio July 11, 2007, pet. denied); M.N., 2007 WL 1366793, at *1 n.1; Pool, 227
S.W.3d at 215 n.11; In re R.M.R., 218 S.W.3d 863, 864 (Tex. App.--Corpus Christi 2007, no pet.);
E.A.R., 201 S.W.3d at 815 (Gray, J., concurring); cf. H.H.H., 2006 WL 2820063, at *1 n.1 (noting
the constitutional concerns of other courts of appeals).
11. The Griffin line of cases concerning indigent access to appellate review is not limited to
criminal cases; in cases involving "state controls or intrusions on family relationships," the United
States Supreme Court "has examined closely and contextually the importance of the governmental
interest advanced in defense of the intrusion." M.L.B., 519 U.S. at 116. Though civil, not criminal,
in nature, "parental termination decrees are among the most severe forms of state action." Id. at 128.
12. The statute in effect at the time of Chad's proceeding did not require indigence to be
asserted or proven by any particular means. The Legislature amended the statute, on May 21, 2007,
for suits filed on or after the immediately effective date, to add subsection (d) requiring a parent
claiming indigence to file an affidavit and the court to hold a hearing. See Act of May 21, 2007, 80th
Leg., R.S., S.B. 813, § 1, available at http://www.capitol.state.tx.us/tlodocs/80R/billtext/html/
SB00813F.htm.
13. "Having undertaken to grant the right to counsel, the State must administer that right
consistent with the Due Process clause." A.H.L., 214 S.W.3d at 51. 
14. The State asserts that Chad's request for counsel in the December 1 letter, received after
judgment, is equivocal or ambiguous (borrowing language from the Miranda line of cases) in that
it does not specify a request for appellate counsel in particular. See Miranda v. Arizona, 384 U.S.
436 (1966). The State does not explain how Miranda's criminal law evidence suppression remedy
applies to the civil appointment of counsel statute at issue here, and we decline to adopt that
approach. Moreover, we note that Chad, in his December 1 letter, requested an attorney--he did not
limit his request to trial counsel.
15. For example, the statutorily required frivolousness hearing--discussed in the prior section
and presumably attended by counsel--is required to be held within thirty days of judgment, a date
which precedes the date on which counsel is deemed appointed. Compare Tex. Fam. Code Ann.
§ 263.405(d) with Tex. Fam. Code Ann. § 263.405(e).
16. See discussion of legislative history, above.
17. As  noted  above,  the  record  indicates  two  different  dates  and  times  at  which  the
December 1 letter was apparently received, both post-default: (1) the stamped date "Dec 11," and
handwritten notation "1:30 p.m."; and (2) the official clerk file-stamp dated December 12, 3:07 p.m. 
The envelope was addressed to the court clerk, but with what is apparently the district attorney's
courthouse suite number. If the record had shown that the clerk had received these documents and,
without file-stamping them, had sent them to the judge, the documents would be deemed filed at the
time of the clerk's first actual receipt. See, e.g., Warner v. Glass, 135 S.W.3d 681, 684 (Tex. 2004)
(a party "should not be penalized for errors made by the court clerk"); Mr. Penguin Tuxedo Rental
& Sales, Inc. v. NCR Corp., 787 S.W.2d 371, 372 (Tex. 1990) (deemed filed when delay in filing
was attributable to courthouse employee); Standard Fire Ins. Co. v. LaCoke, 585 S.W.2d 678, 680
(Tex. 1979) ("an instrument is deemed filed in law at the time it is left with the clerk, regardless of
whether the file mark gives some other date"). The record was not developed on when the
documents entered the courthouse or how the documents ended up on the judge's desk shortly after
entry of default: whether delivered by the court post, although not addressed to the judge; whether
delivered by the clerk, after receipt as addressed on the envelope, without having been stamped first;
or whether delivered by the district attorney, after receipt as also addressed on the envelope.
18. We  do  not  mean  that  the  mailbox  rule  would  not  apply  to  the  definite
deadline--i.e., 10:00 a.m. on the Monday next after twenty days after the date of service--for filing
an answer. See Milam v. Miller, 891 S.W.2d 1, 2 (Tex. App.--Amarillo 1994, writ ref'd).
19. Chad's attorney filed a notice of appeal and motion for new trial, and requested and
participated in a hearing on the motion for new trial, for indigence, and for frivolousness. 
20. See In re R.R., 209 S.W.3d 112, 115 (Tex. 2006) ("some excuse, although not necessarily
a good one, will suffice to show that a defendant's failure to file an answer was not because the
defendant did not care").
21. The trial court conducted a hearing on Chad's motion for new trial. Unlike the evidence
presented at the hearing in R.R., 209 S.W.3d at 114, here, no evidence, by affidavit or otherwise, was
presented that Chad made a mistake in attempting to file an answer or that an accident prevented his
filing. Neither was any evidence presented that Chad's failure was not the result of intentional
conduct or conscious indifference. 
22. Tex. Fam. Code Ann. § 161.001(1)(D). 
23. Tex. Fam. Code Ann. § 161.001(1)(E) (the parent "engaged in conduct or knowingly
placed the child with persons who engaged in conduct which endangers the physical or emotional
well-being of the child"). 
24. Tex. Fam. Code Ann. § 161.001(1)(N). 
25. Stidham testified that, when Chad came to the CPS office in June 2006, he said Ashley had
said he could see his children at that location. Stidham had responded that "the judge determined
his visitation rights" and refused Chad's request. Stidham testified that Chad called Payne "a few
choice names," would not calm down, and started throwing the toys he had brought for his children. 
Stidham called the police, and Chad left with the toys. 
26. Though the State's witnesses were "cross-examined" by the children's ad litem, the
ad litem's questions indicate an alignment with the State's interest in termination. Chad complains,
correctly, that most of the record evidence is hearsay. However, Chad is incorrect that we should
disregard the hearsay testimony. "Rule 802 says, 'Inadmissible hearsay admitted without objection
shall not be denied probative value merely because it is hearsay.' Nothing in rule 802 limits its
application to contested hearings." Tex. Commerce Bank, Nat'l Ass'n v. New, 3 S.W.3d 515, 517
(Tex. 1999) (quoting Tex. R. Evid. 802).